**ARIS–ISOTONER GLOVES, INC., Plaintiff,**

v.

**BERKSHIRE FASHIONS, INC., Defendant.**

83 Civ. 8764.

United States District Court, S.D. New York.

June 5, 1992.

James B. Swire, Townley & Updike, New York City, for plaintiff.

Russell H. Falconer, Doreen Costa, Brumbaugh Graves Donohue & Raymond, New York City, for defendant.

## ORDER

CONBOY, District Judge:

The Court has before it the parties' objections to the Report and Recommendation of United States Magistrate Judge Naomi Reice Buchwald, dated November 1, 1991 ("Remand Report"). Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of the record. Our sole point of departure from the Remand Report is our finding that the unclean hands of defendant Berkshire Fashions, Inc. ("Berkshire") removes this case from equity and so prevents application of the defense of laches to Berkshire's production of infringing gloves bearing the double diamond design.

### I. *Unclean Hands*

A court may decline to exercise its equitable powers in favor of a party whose "unconscionable act ... has immediate and necessary relation to the matter that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). Application of the "unclean hands" doctrine rests with the discretion of the court, which is "not bound by formula or restrained by any limitation that tends to trammel the

free and just exercise of discretion." *Id.* at 245, 54 S.Ct. at 148.

■ Upon questioning at the remand proceedings, Berkshire President Issac R. Dweck made sworn statements relating to a matter in issue that directly and inexplicably contradicted his testimony in the original contempt proceedings. No other conclusion can exist but that Dweck fabricated his testimony either in the instant proceedings or in the original contempt proceedings, when the information upon which his later testimony was based was readily available to him. Such behavior is unconscionable and thus warrants a finding of unclean hands.

In the initial contempt hearing, Dweck engaged in the following colloquy with counsel:

Q. Can you describe for the court the pattern of your sales of the interlocking diamond gloves since you introduced them in early '87?

A. We started initially in a very small quantity.

Q. Why is that?

A. There was some question about what might happen. Mr. Swire had indicated, "Put the goods on the market and then we'll see what happens. If we see it's a problem then we'll take action. If we don't take, you know, we'll see what happens."

So we started in a small way, built the production up greater in 1988 and still nothing happened. And then in 1989 we went full scale and all of a sudden we were being sued.

Transcript of Hearing Before Hon. Naomi R. Buchwald, Dated November 30, 1989 at 163–164 (included in Joint Appendix Before United States Court of Appeals for the Second Circuit, Action No. 90–7394 ("JA") at 442–43).

In Berkshire's papers in opposition to the original finding of contempt, Berkshire argued that (1) its use of the double diamond design was in good faith and (2) Berkshire detrimentally relied upon Aris' delay in suing Berkshire. Defendant's Memorandum of Law in Opposition to Plaintiff's Contempt Motion at 15, 19–20 (JA at 238, 242–243). Although the Magistrate Judge's first Report and Recommendation made a threshold finding against laches on other grounds, the first Report adopted Dweck's above statements in its factual findings. Report and Recommendation Dated January 26, 1990 ("First Report") at pages 7, 14-15. The Court of Appeals in turn incorporated these findings in its opinion. *See Aris Isotoner Inc. v. Berkshire Fashions, Inc.,* 924 F.2d 465, 466 (2d Cir.1991).

In the remand hearing before Magistrate Judge Buchwald, counsel for plaintiff, Aris–Isotoner Gloves, Inc. ("Aris"), confronted Dweck with Berkshire's answers to interrogatories to the effect that Berkshire sold over 50,000 dozen gloves bearing the double diamond design in 1987, and that such sales decreased in 1988. Tr. 122–125.[1] Upon further questioning, Dweck admitted the his prior testimony had been incorrect, *i.e.,* that Berkshire's sales of the gloves bearing the double diamond design were not insignificant in 1987, Tr. 126–127, and that Berkshire had not increased its production of gloves bearing the double diamond symbol in 1988. Tr. 127. He further admitted that the relevant figures that were available to him at the remand hearing had also been available to him at the previous hearing. Tr. 124. In light of the inadequately explained and obvious contradictions as to testimony of direct relevance to the issue of laches, we must conclude that Dweck fabricated testimony.[2]

---

1. "Tr." refers to the remand hearing transcript before Magistrate–Judge Buchwald dated June 24, 1991.

2. We reject Berkshire's original explanation—not repeated in its reply papers—that Dweck corrected his testimony in the hearing on laches, because he allegedly realized that in the initial hearing he had confused sales of the double diamond glove with sales of the inverted chevron glove. This explanation is wholly inconsistent with Dweck's original, confident story of Berkshire's detrimental reliance as to production of the double diamond gloves, which gloves were, after all, the subject of the contempt proceedings. Moreover, Berkshire cites no portion of the record in which Dweck offers the above-mentioned confusion as an excuse for the numerical discrepancy.

We disagree with the positions suggested in the Remand Report and advanced in Berkshire's reply papers before the Court that (1) Dweck's fabrications do not directly relate to or affect the issue of laches and (2) because Dweck's fabrications occurred after the instigation of the lawsuit, they cannot be invoked to bar the defense of laches. Based on Dweck's false testimony itself, we find that Dweck made such testimony in order to create the impression that Berkshire detrimentally relied on the acquiescence of Aris in creating the double diamond line of gloves and that, once such a line became established in 1989, Aris sued Berkshire in bad faith in order to topple Berkshire's now-established line of gloves. A plaintiff's acquiescence and a defendant's consequential detrimental reliance constitute the very essence of laches,[3] and thus Dweck's fabrications directly relate to the issue before the Court. Moreover, Dweck's false testimony gives the impression that Berkshire in good faith tailored its behavior to the initial demands of Aris. Were such testimony true, it would tend to defeat a finding of willfulness, which prevents the application of laches. *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981).

We disagree with Berkshire's argument that the discrepancy between the two testimonies is immaterial because they both assertedly support a finding of laches. Besides lacking any cited authority, this argument misses the point. The Court lacks complete confidence as to which—if either—of the two testimonies is correct. Even assuming that only Dweck's initial testimony is false, a finding of Berkshire's unclean hands on an issue for which it has sought and continues to seek equitable relief is sufficient to bar the prospect of such relief once unclean hands are discovered.[4] Dweck's testimony provided a basis for a ruling in Berkshire's favor on the issue of detrimental reliance, which issue Berkshire pressed both in the initial contempt proceedings and in the instant proceeding.[5] Certain elements of Dweck's testimony—Aris' allegedly feigned acquiescence and turncoat behavior—are directly supported and were intended to be supported by Dweck's fabricated numbers. Because of Berkshire's unclean hands, we find that it is immaterial that Dweck's revised testimony may support a finding of laches.

Finally, we reject Berkshire's implication that the Magistrate–Judge deemed Dweck's fabrication a "molehill." The Magistrate–Judge did not make a factual finding in the Remand Report as to the truthfulness of Dweck's statements. Rather, her decision in the Remand Report that the doctrine of unclean hands did not apply rested solely on a threshold legal determination that Dweck's statements could not be related to the issue of laches because his statements occurred during litigation rather than during the accrual of the action. As we will explain below, we do not adopt this legal conclusion.

We further reject Berkshire's half-hearted explanation—raised in its reply papers for the first time—that the discrepancy between Dweck's testimony in the original contempt hearing and that of the remand hearing may be due to the questioners' dividing sales by calendar years rather than by seasons at the hearings. Defendant's Memorandum Responding to Plaintiff's "Response to Magistrate's Report" at 5–6 n. 5. Berkshire fails to show how the division of the calendar affected Dweck's testimony in either hearing as to the trend of Berkshire's sales over the two-and-a-half year period in question. More to the point, Dweck himself initially and without prompting spoke of the year "1987" as a shorthand for "'87/'88" at the hearing. Tr. 70. We find that Dweck's sophistication on a matter such as his own business' sales cycle precludes the possibility that he was confused on this issue at either hearing. Because Dweck himself stated that Berkshire gloves are first sold in late August or early September, and that glove sales peak between Thanksgiving and Christmas, Tr. 84–85, the increased sales for the "1989" sales period under either the calendar year or glove season terminology could only refer to sales in the period *after* June 12, 1989, the date that Aris filed its petition for contempt. Thus, Dweck's statement that he was sued by Aris after going "full scale" in 1989, JA 443, is manifestly false.

**3.** *See* J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31.5(B).

**4.** *See Keystone*, 290 U.S. at 244–245, 54 S.Ct. at 147 ("The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of this court will be shut against him in limine.'" (citation omitted)).

**5.** Defendant's Memorandum Responding to Plaintiff's "Response to Magistrate's Report" at 10 n. 7.

Berkshire's arguments notwithstanding, we are not here limited by a purported requirement that forces us to separate wrongdoing that occurs prior to the instigation of legal proceedings from that which occurs during legal proceedings. *See American Ins. Co. v. Lucas*, 38 F.Supp. 896, 921–922 (W.D.Mo.1940), *aff'd*, 129 F.2d 143 (8th Cir.), *cert. denied*, 317 U.S. 687, 63 S.Ct. 257, 87 L.Ed. 551 (1942) ("[I]t would be strange if a court of equity had power—because of public policy for its own protection—to throw out a case because it *entered* with unclean hands and yet would have no power to act if the unconscionable conduct occurred while the case was in court.") (emphasis in original); *C.C.S. Communication Control v. Sklar*, 1987 WL 12085, 1987 U.S.Dist. Lexis 4280 (S.D.N.Y.1987) (Conner, J.) (perjured testimony in instant proceedings precludes equitable relief); *cf. Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 106–107 (D.Md. 1989) (dismissing certain claims in non-equity context because of perjured testimony in the instant proceedings; collecting cases).[6] We disagree with the premise of Berkshire's argument that unclean hands can only bar laches if the party asserting laches was either responsible for or fostered the plaintiff's delay. Moreover, cases cited by Berkshire in this regard themselves imply or expressly state that numerous kinds of misconduct can bar a finding of laches.[7]

In sum, we find that the above-cited fabricated testimony of Dweck, whose testimony has been deemed suspect in previous proceedings both in the instant lawsuit and in a prior matter before this Court,[8] bars a finding of laches at the outset. "No court of equity ought to be required to listen to a man whose very presence suggests danger to the administration of justice and whose past conduct affecting the matter in litigation would cast doubt upon the ability of the court to ascertain from him the truth with respect thereto." *Mas v. Coca–Cola Co.*, 163 F.2d 505, 511 (4th Cir.1947).

## II. *The Remaining Objections to the Remand Report*

The above finding of unclean hands precludes the necessity for further findings

6. The cases relied on by Berkshire to the contrary do not involve matters similar to the case at hand, in which a party has fabricated testimony directly related to the equitable issue in dispute before the Court. *See S.E.C. v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 73 (D.Conn. 1988); *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir.1989), *cert. denied*, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990) (court notes that the allegation of "inequitable conduct" purportedly constituting unclean hands was conclusory and vague, that defendant did not claim that the SEC had gathered tainted evidence against him, and that equitable defenses against government agencies are strictly limited; accordingly, investigation by SEC that may incidentally harm defendant's business may not be plead as equitable defense to SEC injunctive action); *Cleveland Newspaper Guild v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1155 (6th Cir. 1988) (court notes that there was no indication that the defendant's assertion of a legal defense against administrative process was raised in bad faith). Although *Electronics Warehouse* stated, as one reason against a finding of a relation between the alleged misconduct and the issue at hand, that courts cannot consider unclean hands that occur during the conduct of a lawsuit, we find the instant case to be broadly distinguishable on its facts and note above the existence of authorities that have considered situations that resemble the instant one.

7. *See Coleman v. Corning Glass Works*, 619 F.Supp. 950, 955 (W.D.N.Y.1985), *aff'd without op.*, 818 F.2d 874 (2d Cir.1987) (unclean hands may be found in cases of exceptional character, "such as" where a defendant causes or fosters delay); *Intertech Licensing v. Brown & Sharpe Mfg. Co.*, 708 F.Supp. 1423, 1439 (D.Del.1989) (cites *Coleman* and adds instances in which there is evidence of defendant's willful misconduct or fraud). *Potash Co. of America v. International Minerals & Chemical Corp.*, 213 F.2d 153, 155 (10th Cir.1954) is not to the contrary. We further disagree with Berkshire's argument that the doctrine of unclean hands especially applies to plaintiffs, as opposed to defendants. The cases that Berkshire cites do not state that a distinction exists as to the application of the unclean hands doctrine to equitable causes of action on the one hand and to equitable defenses on the other, and such a distinction is needlessly artificial and unwarranted under these circumstances.

8. *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F.Supp. 21, 22 (S.D.N.Y.1990). Furthermore, we note that in a prior proceeding in the instant matter, Dweck adopted the statements of counsel that "the Court," presumably Judge Weinfeld, had found that Dweck had given false answers to interrogatories and that he had difficulty being candid during his deposition. JA at 473–475.

regarding laches as to Berkshire's production of gloves bearing the double diamond design. However, even if such findings were necessary, we agree with and hereby adopt Magistrate Judge's Buchwald's conclusions as to the remainder of the Remand Report, including the finding that Berkshire's willful violation of the consent decree's prohibition of the production of the wrist strip in issue prevents the application of laches as a defense to Berkshire's production of gloves bearing a violative wrist strip.

Accordingly, Berkshire is enjoined from any further advertising, distribution, or sale of gloves bearing the double diamond design or any other gloves bearing a violative wrist strip.

Berkshire is further enjoined to choose a distinctive mark on any future gloves sold.

Discovery shall be conducted before the Magistrate Judge in accordance with the findings and conclusions on damages set forth on pages 18 and 19 at ¶ 30 of the First Report. Aris shall have an award of its reasonable attorneys' fees and disbursements in accordance with the terms set forth on page 19 at ¶ 31 of the First Report.

SO ORDERED.