OPINION AND ORDER
 

 BAER, District Judge:
 

 Plaintiffs Estate of' John Lennon (the “Estate”) and Bag One Arts, Inc. (“Bag One”) move for a preliminary injunction and summary judgment on the issue of termination of a licensing agreement between Bag One and defendant Leggoons, Inc. The Estate also moves to dismiss two counterclaims brought by Leggoons. The Court held an evidentiary hearing on February 16, 1996 on the motion for a preliminary injunction and has taken the two additional motions on submissions. For the reasons discussed below, the motion to dismiss is granted and the motion for a preliminary injunction and summary judgment is denied.
 

 Background
 

 On July 30, 1993, Bag One, a licensee of the Estate, entered into a contract (the “Agreement”) with Leggoons authorizing Leggoons to utilize copyrighted works and trademarks owned by the Estate on specified types of clothing. The negotiations that lead to the Agreement were facilitated by James Powers of JP/BK Limited. Powers was later hired as a consultant to Leggoons to assist it in developing products.
 

 The Agreement provides Leggoons with “the exclusive right and license in [the] United States and Canada, Mexico and the Caribbean ... to use the signature of John Lennon ... and artwork created by John Lennon selected by Licensee and approved by Licensor.” Pl.Ex. 1, at ¶ 1(a). In addition, the Agreement provides that “[n]o right to use the likeness of John Lennon are granted hereby, with the exception of the likeness described in Exhibit B.”
 
 Id.
 
 at ¶ 1(c). This photograph is credited to the
 
 *290
 
 photographer MacMillan and was submitted as plaintiffs exhibit 2. Leggoons argues that paragraph 1(c) should be read in conjunction with paragraph 1(a) such that the Agreement is interpreted to grant Leggoons an exclusive right to use the MacMillan photograph on clothing.
 
 See
 
 Leggoons’ Memorandum of Law in Opposition to Plaintiffs’ Motion for a Preliminary Injunction at 4 n. 2
 
 (citing L.G.B., Inc. v. Gitano Group, Inc.,
 
 769 F.Supp. 1243, 1248 (S.D.N.Y.1991)). Plaintiffs did not respond to this argument in their papers. However, their conduct indicates that they agree that the right to use the MacMillan photograph was exclusive. As plaintiffs’ counsel informed the Court at oral argument, when Leggoons complained to Bag One that another firm, Winterland Productions, Inc. was using the image, a member of her law firm wrote a cease and desist letter to Winterland.
 
 See
 
 Tr. at 9; Pl.Ex. 3. In addition, plaintiffs’ counsel stated that “it is Bag One’s position that upon finding out that someone had breached their rights, they immediately took all necessary steps to stop that infringement.” Tr. at 10. Based on the text of the Agreement and plaintiffs’ counsel’s representations, I conclude that the Agreement should be interpreted as Leg-goons urges.
 

 The Agreement required that all goods that Leggoons proposed to produce be approved by Bag One prior to production and outlined the following approval procedure:
 

 4.(a) Prior to the manufacture of the Products, Licensee shall submit to Consultant [JP/BK Limited] and Licensor design boards with fabric standards and item description for each Product, for Licensor’s prior written approval, which approval shall not be unreasonably withheld. In the event Licensor has not responded in writing within seven (7) days after receipt of a prototype for approval, the prototype shall be deemed disapproved. In the event no response is received from the Licensor in writing as to its approval or disapproval, within such (7) days, Licensee may thereafter provide Licensor with written notice of such failure to respond. Should Licensee provide such written notice and should Licensor thereafter fail to respond within five (5) days from receipt, Licensor’s silence shall be deemed to constitute approval for such prototype.
 

 Pl.Ex. 1, at ¶ 4(a).
 

 The Agreement also provided in paragraph seven that Leggoons would make periodic advance royalty payments on a semi-annual basis.
 
 Id.
 
 at ¶ 7(d). The Agreement specified that Bag One could terminate the Agreement for cause if Leggoons breached any of the material terms, including the obligation to pay advance royalties. As stated in paragraph 14(b):
 

 If Licensee shall breach any of the material terms and conditions of this agreement, Licensor shall have the right to terminate the Term upon written notice to Licensee unless Licensee shall completely remedy the breach within fifteen (15) days from receipt of Licensor’s notice of a breach of paragraph “7” and within forty-five (45) days from receipt of Licensor’s notice of a breach of paragraphs “4”, “8”, or “13”. For the purposes of this agreement, Licensee’s breach of paragraphs “4”, “7”, “8” or “13” hereinabove are hereby acknowledged by both parties to be deemed material breaches.
 

 Id.,
 
 at ¶ 14(b).
 

 At issue in this dispute are three images that the Estate claims were never approved and the “John Lennon” signature trademark. The first image is a photograph of John Lennon wearing sunglasses and a fedora, credited to the photographer Nishi. The Estate claims that use of this image was not authorized under the Agreement and was not subsequently approved.
 
 [1]
 

 The second image is a design called “Give Peace a Chance” featuring a hand holding a flower. This image is part of a larger John Lennon work that was cropped by Leggoons.
 
 *291
 
 Finally, the third image is a design called “Shine On” that features a compilation of song lyrics and artwork at least some of which were created by Lennon. TUI three of these images were included on design boards presented to Bag One in July 1994.
 
 See
 
 Powers Decl. ¶¶ 4-5; Tamsky Aff. Ex. B. The parties dispute whether these story boards were rejected and therefore whether use of the images was unauthorized.
 

 Leggoons contends that its venture was unsuccessful because the Estate had granted licenses to Winterland which produced less expensive competing clothes.
 
 [2]
 
 In addition, Leggoons argues that James Powers of JP/BK Limited acted as an agent for Bag One and fraudulently induced it to enter into the Agreement by posing as an agent for Leggoons. For these reasons, Leggoons sued Yoko Ono and Bag One in March 1994 in the Eastern District of Missouri. This action was dismissed for lack of personal jurisdiction.
 
 [3]
 

 Based on its belief that Bag One had breached the exclusivity clause in the Agreement, Leggoons stopped paying the advance royalties. Leggoons failed to pay the March 15, 1995 installment and has not made any advance royalty payments since then. It has, however, made the royalty payments due on those products actually manufactured. See
 
 Def.’s Mem.
 
 at 6 (citing Clinton Deposition at 51-53, 60).
 

 On March 17, 1995, Bag One sent Leg-goons a default notice demanding the March 15,1995 payment and invoking ¶ 14(b) of the Agreement.
 
 See
 
 Affidavit of Lynne Clifford Sworn to on January 18, 1996, at Ex. E. As noted above, no advance payments have been made in response. In addition, on April 19, 1995, Dorothy Weber, Esq., counsel to plaintiffs sent Mitchell Margo, Esq., counsel to Leggoons, a letter demanding that Leggoons cease and desist from manufacturing new clothing.
 
 See
 
 Def.Ex. P. The Estate seeks summary judgment terminating the Agreement as of April 2, 1995, fifteen days after the March 17,1995 letter was sent.
 

 Discussion
 

 I. Motion to Dismiss Counterclaims
 

 Leggoons has asserted three counterclaims, two of which are challenged on this motion. The Estate moves to dismiss the second counterclaim for tortious interference with contract pursuant to Fed.R.Civ.P. 12(b)(6), and to dismiss the third counterclaim for fraud for failure to satisfy Fed. R.Civ.P. 9(b). In the alternative, the Estate moves for a more definite statement pursuant to Fed.R.Civ.P. 12(e). In support of this motion, the Estate submitted affidavits of Peter S. Shukat, Esq., counsel to plaintiffs, and Yoko Ono Lennon as well as attached exhibits. Defendant argues that this motion should be converted to one for summary judgment and then adjourned pending further discovery.
 

 Rule 12(b) provides that:
 

 
 *292
 
 If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 

 Under this Rule, the Court may either exclude the additional submissions and decide the motion on the pleadings only or convert the motion to one for summary judgment.
 
 See Fonte v. Board of Managers of Continental Towers Condominium,
 
 848 F.2d 24, 25 (2d Cir.1988). In determining whether to convert the motion, the Court considers if conversion “is likely to facilitate the disposition of the action.” 5A Charles A. Wright
 
 &
 
 Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 1366, at 493 (2d ed. 1990). “When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it; when it is scanty, incomplete, or inconclusive, the court probably will reject it.”
 
 Id.; see also Isquith v. Middle South Utilities, Inc.,
 
 847 F.2d 186, 193 n. 3 (5th Cir.1988).
 

 The Court finds, in this case, that it would be inappropriate to accept the affidavits submitted in support of the motion to dismiss. The affidavits submitted are scanty and inconclusive and would not assist the court to resolve this dispute as a motion for summary judgment. Therefore, the motion will be determined under the requisite standard of Rule 12(b)(6).
 

 In judging the legal sufficiency of the complaint against a Rule 12(b)(6) challenge, the Court must accept all factual allegations in the complaint as true.
 
 Cohen v. Koenig,
 
 25 F.3d 1168, 1171-72 (2d Cir.1994). The Court may only dismiss the action where “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 

 A. Tortious Interference With Contract
 

 To state a claim for tortious interference with contract under New York law, the plaintiff must allege (1) the existence of a valid contract; (2) that the defendant had knowledge of this contract; (3) that defendant intentionally procured the breach of that contract; and (4) that the plaintiff was damaged by the breach.
 
 See Finley v. Giacobbe,
 
 79 F.3d 1285, 1294 (2d Cir.1996);
 
 G.K.A. Beverage Corp. v. Honickman,
 
 55 F.3d 762, 767 (2d Cir.1995). The Estate argues that Leggoons has failed adequately to allege the third element.
 

 Leggoons alleges that “[t]he Estate tortiously interfered with the License Agreement by authorizing third persons to use the John Lennon image, the John Lennon signature and the artwork on the specified clothing within the stated markets in derogation of Leggoons’ exclusive license.”
 
 Counterclaim
 
 ¶ 17. Although Leggoons did respond to the Estate’s motion on this point, and thus narrowly averted a default, it did not cite any legal authority in defense of its counterclaim. Such memoranda are not helpful to the Court and are discouraged.
 

 I conclude that the counterclaim fails to state a claim because it does not allege the requisite intent. Leggoons does not allege that the Estate acted with the intent to procure the breach of the contract between Bag One and Leggoons.
 
 Cf. G.K.A. Beverage,
 
 55 F.3d at 767-68. Since intent is an essential element of the tort, Leggoons’ second counterclaim is dismissed.
 

 B. Fraud
 

 The Estate argues that Leggoons’ fraud counterclaim must be dismissed for failure to plead with sufficient particularity as required by Rule 9(b). Leggoons claims that the Estate made fraudulent representations regarding the exclusivity of the Agreement. Local Rule 3(b) requires that a party opposing a motion serve and file an answering memorandum that sets forth the points and authorities relied upon in opposition. The rule clearly warns parties that “[fjailure to comply may be deemed sufficient cause for ... the granting of the motion by default.”
 
 *293
 
 Leggoons did not respond to the plaintiff’s motion on this point at all; rather it acted as if the motion had not been brought. Accordingly, under Local Rule 3(b), the motion is granted by default.
 

 II. Motion for Summary Judgment
 

 The Estate and Bag One seek summary judgment finding that the Agreement terminated on April 2, 1995. Defendant argues that this motion is not yet ripe for determination and that further discovery is needed. Fed.R.CivJP. 56(f) requires that a party opposing a motion for summary judgment on this basis submit an affidavit that details: “(1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful.”
 
 Sage Realty Carp. v. Insurance Co. of North America,
 
 34 F.3d 124, 128 (2d Cir.1994). Furthermore, the discovery sought must be material to the opposition of the summary judgment motion.
 
 Id.
 

 Defendant’s counsel, Joe Jacobson, Esq., submitted an affidavit in support of his application to adjourn this motion. While this affidavit does not exactly satisfy the
 
 Sage Realty
 
 requirements, I conclude that given the preliminary stage of these proceedings, it is preferable to permit further discovery before conclusively ruling on this issue. Accordingly, plaintiffs’ motion for summary judgment is denied with leave to renew following further discovery.
 

 III. Motion for Preliminary Injunction
 

 The Estate and Bag One also seek a preliminary injunction to enjoin Leggoons from infringing the Estate’s trademark and copyrights. A preliminary injunction is “an extraordinary and drastic remedy which should not be routinely granted.”
 
 Medical Society v. Toia,
 
 560 F.2d 535, 538 (2d Cir. 1977); see
 
 also Patton v. Dole,
 
 806 F.2d 24, 28 (2d Cir.1986). To obtain a preliminary injunction, the moving party must establish “(1) irreparable injury and (2) a likelihood of success on the merits or a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party’s favor.”
 
 Laureyssens v. Idea Group, Inc.,
 
 964 F.2d 131, 135-36 (2d Cir.1992);
 
 see also Fisher-Price Inc. v. Well-Made Toy Manufacturing Corp.,
 
 25 F.3d 119, 122 (2d Cir.1994). Plaintiffs have presented compelling arguments that they have a likelihood of success on the merits and will be irreparably harmed without preliminary relief. Injunctions, however, are an equitable remedy and I find that plaintiffs are precluded from equitable relief under the doctrine of unclean hands.
 

 A court may deny injunctive relief based on the defense of unclean hands “ “where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.’ ”
 
 Performance Unlimited, Inc. v. Questar Publishers, Inc.,
 
 52 F.3d 1373, 1383 (6th Cir.1995)
 
 (quoting Novus Franchising, Inc. v. Taylor,
 
 795 F.Supp. 122, 126 (M.D.Pa. 1992));
 
 see also Saxon v. Blann,
 
 968 F.2d 676, 680 (8th Cir.1992);
 
 Fuddruckers, Inc. v. Docs’ B.R. Others, Inc.,
 
 826 F.2d 837, 847 (9th Cir.1987).
 

 Leggoons argues that Bag One committed several acts evidencing bad faith during the negotiations of the Agreement. First, it claims that James Powers acted as an agent for Leggoons in negotiating with Bag One when in fact he was an agent for Bag One. In addition, Leggoons claims that Bag One misrepresented the exclusivity of the Agreement. Finally, Leggoons cites several other alleged misrepresentations by Bag One.
 
 See
 
 Def.Mem. at 15-16.
 

 The record established that there was a relationship between James Powers and Bag One. For example, in a July 25, 1994 letter to Lynne Clifford of Bag One, Powers noted that he was in a difficult position because he had been hired as a consultant to Leggoons but his “allegiance and alliance has always and will always be with you personally along with Yoko and Bag One Arts.” Def.Ex.N., at 1. Similarly, in an August 11, 1994 letter to Clifford, Powers wrote that “although my gut says to dump these guys [Leggoons], I think it is a more prudent position to gain more
 
 *294
 
 control over them until we see that they can perform.” Def.Ex. 0, at 1.
 
 See also
 
 Deposition of James Clinton at 111; Deposition of Robert Tamsky at 116-17 (both attached to Affidavit of Robert J. Lack, Esq.) (stating that Leggoons was unaware of Powers’ relationship with Bag One when he was consulting for them in the negotiations with Bag One). Bag One’s acts of negotiating with its own agent posing as the agent of its bargaining adversary raise the specter of bad faith.
 

 Leggoons also claims that the plaintiffs have unclean hands because they misrepresented the exclusivity of the Agreement. As noted above, Bag One agreed to provide Leggoons an exclusive license to use the John Lennon signature, John Lennon artwork and the MacMillan photograph of John Lennon. Leggoons, however, argues that Bag One made several misrepresentations regarding the exclusivity of the Agreement to induce it to enter into the Agreement.
 
 See
 
 Deposition of Robert S. Tamsky at 140-41. In addition, during the negotiations between Bag One and Leggoons, the Estate had granted a competing license to Winter-land to use approved photographs of John Lennon on t-shirts.
 

 I find that the record sufficiently supports Leggoons’ unclean hands defense. Therefore, as a court of equity, I must deny plaintiffs’ motion for a preliminary injunction. To minimize any risks of irreparable harm to the plaintiffs, however, the Court will place this action on an accelerated schedule.
 

 Conclusion
 

 As stated above, the Estate’s motion to dismiss is granted. The motion by the Estate and Bag One for a preliminary injunction and summary judgment is denied. Plaintiffs may renew their motion for summary judgment following additional discovery. The parties are directed to contact Chambers within seventy-two hours to schedule a conference during the week of September 16,1996.
 

 SO ORDERED.
 

 [1]
 

 . In a conference call on February 27, 1996, the plaintiffs informed the Court that the defendant’s use of the Nishi photograph is challenged because it was not included in the Agreement. The plaintiffs seek an injunction against the use of the Nishi photograph in conjunction with the John Lennon signature which is registered as a trademark. The Nishi photograph is apparently only used in conjunction with the signature mark.
 

 [2]
 

 . There were three licenses to Winterland. The first was a license granted by the photographer Bob Gruen to use five Gruen photographs of John Lennon dated March 15, 1991. This agreement was "accepted and agreed” to by Yoko Ono and provided for payment of fifty percent of the royalties to Yoko Ono. Def.Ex. H. The second license was between Bag One and Winterland and authorized the use of the John Lennon name and a peace symbol on a t-shirt. Def.Ex. L; Tr. at 29. This license was dated July 15, 1991. The final agreement, which Leggoons contends was most damaging, was granted by Yoko Ono to Winterland. This agreement licensed the use of photographs and likenesses of John Lennon that were approved by Yoko Ono as well as John Lennon’s name in conjunction with the photographs. This agreement was dated December 20, 1991. One note about the record is appropriate. This third agreement was attached as exhibit D to the Affidavit of Yoko Ono sworn to on January 12, 1996 and submitted in support of the Estate’s motion to dismiss Leggoons’ counterclaims. As discussed below, the Court has decided not to accept this affidavit. At the hearing on February 16, 1996, Leggoons submitted the first two agreements but did not submit the third because it had been attached to the Yoko Ono affidavit. In addition, Leggoons indicated in its memorandum in opposition to the motion for a preliminary injunction, at page 4, that the agreement was "attached hereto.” However, the agreement was not attached to the memorandum submitted to Chambers. I conclude that since the plaintiffs have submitted the agreement, and the defendant relied on this submission, it is preferable to consider exhibit D to the Yoko Ono affidavit as part of the record on this motion.
 

 [3]
 

 . Hardly on substantive grounds as plaintiffs' memorandum would lead the reader to believe.