**GIDATEX, S.r.L., Plaintiff,**

v.

**CAMPANIELLO IMPORTS, LTD., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc., Defendants.**

**No. 97 CIV. 9518(SAS).**

United States District Court, S.D. New York.

Oct. 6, 1999.

---

Thomas G. Bailey, Jr., Frank Morreale, Whitman, Breed, Abbott & Morgan, L.L.P., New York City, for Plaintiff.

Nathan Lewin, Paul F. Enzinna, Tim Preso, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, D.C., for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Gidatex, S.r.L. ("Gidatex") filed this suit against Defendants Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc. (collectively "Campaniello") in 1997, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), common law trademark infringement, and common law unfair competition. Jurisdic-

tion is based on the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), 1338 (jurisdiction to adjudicate cases involving infringement of a federally registered trademark and accompanying claims of unfair competition) and 1367(a) (supplemental jurisdiction).

Defendants assert, *inter alia*, the equitable defenses of unclean hands, laches and acquiescence. The Court bifurcated the equitable and legal claims, and the latter were tried to a jury from August 23 to August 31, 1999. The jury trial resulted in a verdict for plaintiff on all of its trademark and unfair competition claims and an award of defendants' profits in the amount of $50,000. Seeking to bar an injunction against their use of plaintiff's trademark, defendants now submit for the Court's consideration their affirmative defenses of unclean hands, laches and acquiescence. Final submissions on the equitable portion of the case were made on October 1, 1999. This opinion constitutes the Court's findings of fact and conclusions of law regarding these equitable defenses.

## I. Findings of Fact

1. From 1974 to 1994, Campaniello acted as the exclusive sales representative for Saporiti Italia ("Saporiti"), an Italian furniture manufacturer. *See* Testimony of Thomas Campaniello, owner or Campaniello, Trial Transcript ("Tr.") at 462–3. In March 1994, Campaniello sued Saporiti for breach of contract, fraud, and misrepresentation, arguing, *inter alia*, that Saporiti violated the terms of the exclusive arrangement with Campaniello by taking direct orders from Campaniello's exclusive sales territories. (The "1994 Litigation"). *See id.* at 468–469.

2. During the course of the 1994 Litigation, Saporiti filed for the Italian equivalent of bankruptcy. *Id.* Subsequently,

under the supervision of an Italian bankruptcy court, plaintiff Gidatex leased Saporiti's assets with the option to purchase them at a later date. *Id.* at 470.

3. Gidatex then entered into a distributorship agreement with Campaniello similar to the one between Saporiti and Campaniello (the "Agreement"). As part of the Agreement, Campaniello withdrew its 1994 Litigation against the Saporiti defendants. In return, Gidatex engaged Campaniello as the exclusive distributor of Saporiti Italia furniture in the United States and other Western Hemisphere countries through March 31, 1995, with an automatic five-year extension if Gidatex purchased Saporiti's assets.[1] The terms of the Agreement required Campaniello to make certain minimum purchases of Saporiti Italia furniture. *Id.* at 474–75, 812; Memorandum of Agreement, June 14, 1994, Defs.' Ex. R.[2]

4. Between June 1994 and March 1995, Campaniello was displeased with the quality of the Saporiti Italia goods and Gidatex's delays and inaccuracies in filling its orders. *See* Tr. at 491, 495, 517, 814 (T. Campaniello); Correspondence from T. Campaniello to Gidatex notifying Gidatex of customer complaints, Defs.' Exs. CC, DD, EE, FF, GG, KK, MM, PP, XX, CCC, LLL, ZZZ, CCCC; Letter from Nurit Kandel, interior designer and Campaniello customer, to Campaniello voicing complaints with Saporiti Italia goods, Defs.' Ex. UU. To appease its customers, Campaniello provided refunds and discounts. *See* Correspondence from Campaniello to customers informing them of discount due to customer's displeasure with Saporiti, Defs.' Exs. YY, KKK; Correspondence from Campaniello to Gidatex informing Gidatex of refunds and discounts it offered to displeased customers, Defs.' Ex. EEEE. Ultimately, Campaniello did not place sufficient orders with Gidatex to meet its

---

1. Gidatex also offered to pay Campaniello 750 million Italian Lire to settle the lawsuit. To date, Gidatex has paid approximately 90 million lire. *See* Tr. 474 (T. Campaniello).

2. All exhibits cited in this Opinion are either plaintiff's or defendants' trial exhibits ("Defs.' Ex." or "Pl.'s Ex.").

minimum purchase requirements. *See* Tr. 517 (T. Campaniello).

5. Gidatex purchased Saporiti Italia's assets, but refused to continue Campaniello's distributorship for the additional five years as provided by the Agreement, citing Campaniello's failure to meet its minimum required purchases. In April 1995, ten months after it entered into the Agreement, Gidatex verbally terminated its relationship with Campaniello. *See* Declaration of Thomas Campaniello, March 17, 1998 ("T. Campaniello Decl."), attached to Defendants' Post–Trial Memorandum of Law in Support of Unclean Hands Defense, Ex. A, ¶ 6.

6. At the time of the termination, Campaniello had approximately $1 million worth of Saporiti Italia furniture in its warehouses and showrooms. *See* Tr. 298 (Raffaele Saporiti, sole administrator of Gidatex), 531–32 (T. Campaniello). Gidatex refused to buy back the furniture, but allowed Campaniello to sell its remaining stock. Tr. 298 (R. Saporiti).

7. Despite the termination of the Agreement, Campaniello continued to use the Saporiti Italia trademark. Eight months after Gidatex's oral termination of the Agreement, Gidatex's counsel advised Campaniello's counsel that Campaniello was only permitted to use the Saporiti Italia trademark in connection with the sale of the remaining Saporiti inventory. *See* Letter of David A. Botwinik, Esq. to Stephen Hochhauser, Esq., December 22, 1995, Pl.'s Ex. 4. Specifically, Gidatex communicated the following:

> We therefore request that you advise your client to discontinue the use of the Saporiti trademark in connection with its business. A mere walkby of the Campaniello premises located [in New York City] indicates that the name Saporiti is displayed more prominently than Campaniello. It is an elementary principle of trademark law that the public should not be subjected to confusing trademarks. Thus, the Saporiti trademark should be removed from all loca-

tions on the Campaniello premises where it is prominently displayed. Of course, any remaining use of the Saporiti trademark must be limited to Saporiti products.

> In the event that Campaniello continues to improperly use the Saporiti trademark, we will, on behalf of our clients, pursue their remedies in all appropriate forums.

*Id.* Twenty-two months later, Gidatex's counsel sent a "cease and desist" letter to Campaniello. *See* Letter from Thomas G. Bailey, Jr., Esq. to Thomas Campaniello, October 16, 1997, Pl.'s Ex. III–A. That letter warned:

> It has come to our attention that without authorization from Gidatex, Campaniello is displaying Saporiti Italia signage at its retail locations, maintaining telephone listings under the Saporiti Italia name and otherwise using the Saporiti Italia trademark in commerce in a manner that imitates and infringes upon Gidatex's rights.

> In order to avoid unnecessary litigation to enforce Gidatex's rights, we urge you to remove immediately the Saporiti Italia signs from each of your stores and to cease and desist from any further infringing activities. Unless we have received a written confirmation from you by October 31, 1997 that all signs and all other indicia of any connection between Campaniello and Saporiti Italia have been removed, and that Campaniello will cease all future use of the Saporiti Italia trademark and name, we will have no alternative but to seek all relief to which Gidatex may be entitled.

*Id.* Gidatex's letter provoked the following curt response from Campaniello: "This letter is to inform you that we have no intention of removing the name Saporiti Italia from our wholesale showrooms...." Letter of Thomas Campaniello to Thomas G. Bailey, Jr., Esq., October 21, 1997, attached to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Li-

mine to Preclude Evidence of Communications of Investigators ("Pl.'s Mem."), Ex. 2.

Within the following two months, Gidatex sent undercover investigators into Campaniello's showroom to determine whether Campaniello was using the Saporiti Italia trademark to "pass off" other brands of furniture similar in style to authentic Saporiti merchandise. *See* Letter of Investigator Susan M. Peterson to Thomas G. Bailey, Esq., December 22, 1997, attached to Pl.'s Mem., Ex. 3. Displeased with Campaniello's continued use of the Saporiti mark, plaintiff filed suit on December 29, 1997, but did not serve defendants until February 23, 1998. *See* Tr. 835 (T. Campaniello).

8. At trial, Thomas Campaniello testified that after the termination of the Agreement in April 1995, no one from Gidatex gave Campaniello permission to use the Saporiti signs or trademark. *See* Tr. 686 (T. Campaniello). Mr. Campaniello remembered that his lawyer, Mr. Hochhauser, had given him a copy of the December 22, 1995 letter from Mr. Botwinik during that same month. Although Mr. Campaniello understood that the letter requested that he take down the Saporiti sign, he disregarded the letter because he considered it "incidental". *Id.* at 688–89. Mr. Campaniello also recalled seeing the October 1997 cease and desist letter and taking this second warning more "seriously". *Id.* at 690. Mr. Campaniello agreed with plaintiff's counsel that the two letters "left no doubt" in his mind that Gidatex did not approve of Campaniello's use of the Saporiti sign and trademark. *Id.* at 692.

9. Nevertheless, Saporiti signs remained on the storefront of Campaniello showrooms in New York, Dallas and Miami and Dania, Florida where Saporiti stock continued to be sold. *See* Tr. 675–76 (Sandra Campaniello, Secretary Treasurer of Campaniello); Tr. 834 (T. Campaniello). In addition, Campaniello continued to advertise sales using the Saporiti name, maintained telephone listings under the Saporiti name and placed the name on building

directories and delivery trucks. *See* T. Campaniello Decl., ¶ 15.

10. Campaniello made the marketing decision to liquidate its Saporiti inventory gradually, primarily through annual warehouse sales, so as not to compete with its other inventory. *See* Tr. 701–01 (T. Campaniello). To date, Campaniello has sold more than half of its Saporiti Italia inventory. The remaining inventory has a value of approximately $350,000. *See id.* at 532; Tr. 616 (S.Campaniello).

## II. Conclusions of Law

### A. Unclean Hands

11. Because a court sitting in equity is "a vehicle for affirmatively enforcing the requirements of conscience and good faith," *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), a party "who comes into equity must come with clean hands" if relief is to be granted. "The defendant who invokes the doctrine of unclean hands has the burden of proof." 4 Rudolf Callman, *The Law of Unfair Competition, Trademarks and Monopolies,* § 22.18 (4th ed.1997); *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,* 13 F.Supp.2d 430, 439 (S.D.N.Y.1998). In short, Campaniello asserts that Gidatex has acted in bad faith by fraudulently inducing Campaniello to enter into an exclusive distributorship contract for Saporiti Italia products solely to settle the 1994 Litigation. Campaniello contends that Gidatex never had any intention of dealing with Campaniello. Under Campaniello's theory, after requiring Campaniello to make certain minimum purchases, Gidatex then purposefully delayed shipments, left orders unfilled, or substituted inferior goods, causing Campaniello to compensate angry customers with refunds and discounts. As a result, Campaniello alleges that it was unable to place sufficient orders for Saporiti Italia furnishings to meet its

minimum purchase requirements under the Agreement.

12. Typically, courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior. *See, e.g., Goldstein v. Delgratia Mining Corp.,* 176 F.R.D. 454, 458 (S.D.N.Y.1997)(unclean hands defense successful where plaintiff made multiple misrepresentations to court regarding law and facts); *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.,* 792 F.Supp. 969, 970 (S.D.N.Y.), *aff'd by summary order,* 983 F.2d 1048 (2d Cir.1992)(defendant's unclean hands barred laches defense in trademark dispute where defendant's president fabricated testimony to create impression that he detrimentally relied on plaintiff's acquiescence).

13. Defendants here have not met their burden of proving that the reasonable inference to be drawn from Gidatex's behavior during and after the negotiation of the Agreement is that Gidatex entered into the Agreement in bad faith and then pretextually terminated it. In fact, Campaniello's allegations of Gidatex's unconscionable acts are uncorroborated. The evidence does suggest that Gidatex's performance under the Agreement was less than satisfactory in terms of its ability to fill orders correctly and promptly. Nonetheless, poor performance of a contract does not rise to the level of unconscionability required to support an unclean hands defense.

14. Even assuming, *arguendo,* that defendants had met their burden of proving that Gidatex acted unconscionably, defendants' unclean hands defense would still fail because Campaniello cannot show that Gidatex's purported bad faith *related to the matter at issue* in this litigation. *See*

*Estate of John Lennon v. Screen Creations, Ltd.,* 939 F.Supp. 287, 293 (S.D.N.Y.1996).

15. A court may "deny injunctive relief based on the defense of unclean hands where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith *related to the matter at issue* to the detriment of the other party." *Estate of John Lennon,* 939 F.Supp. at 293 (internal quotations and citations omitted)(emphasis added); *see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (*"McCarthy"*) § 31:48 at 31–85 (4th ed. 1999)("Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation")(citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933)(the "unconscionable act of one coming for relief has immediate and necessary relation to the equity that [it] seeks in respect of the matter in litigation")). The unclean hands defense does not permit defendants to raise all of plaintiff's alleged inequitable conduct. The alleged unclean hands must relate to Gidatex's *acquisition* or *use* of the Saporiti trademark, and does not apply to issues which are collateral to the infringement litigation. *See Liz Claiborne,* 13 F.Supp.2d at 445 (citing 5 *McCarthy* § 31:51); *see also Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir.1983)(defense "applies only with respect to the right in suit").

16. While it appears to be a simple maxim that a court in equity is required to examine whether a plaintiff has acted without fraud or deceit as to the controversy at issue, it is often quite difficult to determine whether a plaintiff's allegedly deceitful conduct is related to the litigation.[3]

3. Indeed, some courts presented with similar circumstances have disagreed on what constitutes a "substantial relationship" between the inequitable conduct and the litigation. *Compare U.S. Jaycees v. Philadelphia Jaycees,* 639 F.2d 134 (3rd Cir.1981)(rejecting unclean

hands defense in trademark infringement suit where all-male national organization sought to enjoin local chapter's use of Jaycee mark after local admitted women, finding lack of "a substantial relationship" between gender discrimination and trademark enforcement) *with*

Hence, "[a]pplication of the 'unclean hands' doctrine rests with the discretion of the court, which is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *Aris–Isotoner*, 792 F.Supp. at 969–70 (quoting *Keystone*, 290 U.S. at 245, 54 S.Ct. 146).

17. I find that Campaniello's allegations of bad faith are not sufficiently related to Gidatex's infringement claim to justify an unclean hands defense.[4] First, defendants do not allege that Gidatex's alleged inequitable conduct relates to Gidatex's *acquisition* of the Saporiti trademark. Second, contrary to defendants' assertions, Gidatex's alleged inequitable conduct does not relate to its *use* of the Saporiti trademark. Here, the unclean hands defense relates to plaintiff's conduct and intent in entering into a licensing agreement and its allegedly wrongful termination of that agreement. The claim asserted by Gidatex is that of a trademark owner with the exclusive right to use its mark. Consequently, even if Gidatex has unclean hands, Campaniello cannot prove that Gidatex dirtied its hands in its use of the Saporiti Italia trademark or in bringing this suit to enforce its rights against an infringer.

In *Burger King Corp. v. Hall*, 770 F.Supp. 633, 639 (S.D.Fla.1991), the district court preliminarily enjoined a former franchisee from using plaintiff's trademark and holding herself out as an authorized franchisee, despite defendant's contention that plaintiff dirtied its hands by wrongfully terminating the franchise agreement. Burger King terminated defendant's franchise agreement after defendant failed to pay monthly royalties and make the required advertising and sales promotion contributions. Arguing that the agreement had been wrongfully terminated by Burger King, defendant continued to use and display the Burger King marks. The defendant alleged that her damage claims against plaintiff exceeded the total amount of unpaid royalties and advertising contributions that she had refused to pay. *Id.* at 638. The court rejected the franchisee's unclean hands defense, finding that her allegation of wrongful termination did not amount to an allegation of Burger King's misuse of its own mark, a requirement of the defense. *Id.* at 639.

18. The cases relied on by Campaniello involve deceptive conduct which is both more egregious and more closely related to plaintiff's acquisition or use of the mark than the circumstances presented here. *See, e.g., Estate of John Lennon*, 939 F.Supp. at 293–94 (denying preliminary injunction against terminated trademark licensee based on unclean hands defense

---

U.S. *Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379, 383 (8th Cir.1986)("principles of equity" bar injunction against trademark infringement where all-male national organization terminated local's license when local admitted women).

4. Campaniello makes much of the fact that in a previous opinion this Court held that the defenses Campaniello would most likely raise at trial would overlap with the evidence supporting Campaniello's dismissed counterclaims of unfair competition, misappropriation and unjust enrichment. *See Gidatex v. Campaniello*, 73 F.Supp.2d 345, 347 (S.D.N.Y.1999)(denying Campaniello's Rule 54(b) motion for entry of final judgment so that it might appeal the dismissal of its counterclaims prior to trial on plaintiff's claims). In that opinion, the Court noted that defendants' counterclaims arose "out of the same business relationship as plaintiff's claims." *Id.* Merely because Campaniello's counterclaims and affirmative defenses arise out of the same business relationship as Gidatex's claims, however, does not mean that Gidatex's alleged inequitable conduct with regard to its acquisition or use of the Saporiti trademark is sufficiently related to the litigation for the purposes of an unclean hands defense. The Second Circuit has repeatedly emphasized the narrowness of the doctrine's application. *See, e.g., Warner Bros.*, 724 F.2d at 334 (citing *Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff*, 45 F.2d 94, 96 (2d Cir.1930)(unclean hands defense did not bar plaintiff's unfair competition claim, despite plaintiff's apparent fraud in filing trademark application such that plaintiff was precluded from asserting trademark infringement claim)).

where double-dealing plaintiff posing as defendant's agent "committed several acts of bad faith" including: making several misrepresentations; fraudulently inducing defendant to enter into purportedly exclusive licensing agreement; and engaging in transactions with third party that violated exclusivity); *Adray v. Adry–Mart, Inc.*, 76 F.3d 984 (9th Cir.1995)(court narrowed injunction against defendant because plaintiff changed its logo to make it "virtually identical" to that of defendant); *Ellenburg v. Brockway*, 763 F.2d 1091 (9th Cir.1985)(plaintiff's ERISA action seeking retirement benefits barred by unclean hands where plaintiff lied about his date of birth in order to fabricate retirement eligibility); *Federal Folding Wall Corp. v. Nat'l Folding Wall Corp.*, 340 F.Supp. 141 (S.D.N.Y.1971)(complaint dismissed in trademark action where plaintiff, a former employee of defendant, violated contract and fiduciary duties to defendant by forming competing corporation and acquiring defendant's trademark rights by causing third-party trademark licensor to cancel its licensing agreement with defendant).

19. Finally, in deciding whether plaintiff's alleged unclean hands should bar injunctive relief, the Court must consider the public interest. "The relative extent of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck." *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 350 (9th Cir.1963). Where the law invoked by a plaintiff protects the public, such as here where Gidatex has invoked the Lanham Act, some courts have held that unclean hands is not a defense to an injunction. *See e.g., Bell v. Streetwise Records, Ltd.*, 761 F.2d 67, 75 (1st Cir.1985)(Breyer and Coffin, JJ., concurring)(district court found that plaintiff musical performers had dirtied their hands by disaffirming their employment con-

tracts and refused to grant injunction against use of trademark; appellate court reversed; unclean hands doctrine cannot justify continuation of public confusion); *Fund of Funds, Ltd. v. First American Fund of Funds, Inc.*, 274 F.Supp. 517, 519 (S.D.N.Y.1967)(refusing to apply unclean hands doctrine to securities case "since the central concern of the law of unfair competition . . . is protection of the public from confusion in the securities market"). "It is better to remedy one wrong than to leave two wrongs at large. If defendant thinks that plaintiff is guilty of inequitable conduct, he should raise it in a counterclaim or in a separate suit against plaintiff." 5 *McCarthy* § 31:53 at 31–93.[5]

The jury in this case sided with Gidatex, finding that defendants' use of the Saporiti Italia mark created a likelihood of consumer confusion and amounted to unfair competition under both state and federal law. Therefore, an injunction should be granted, despite plaintiff's alleged inequitable conduct, in order to protect the public from confusion and to foster fair competition.

## B. Laches

20. "Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action." *Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 44 (2d Cir.1994). The defendant carries the burden of proof to show that "circumstances exist which require the application of the doctrine of laches." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996).

[A] defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action. A defendant has been prejudiced by a delay when the assertion of a claim avail-

5. Campaniello sued Gidatex for breach of contract and fraud arising out of the alleged wrongful termination of the Agreement. That claim is proceeding in arbitration in Italy. While pursuing relief in another forum does

not preclude defendants' assertion of the unclean hands defense in the instant litigation, it does provide defendants with the possibility of obtaining relief despite the failure of their unclean hands defense.

able some time ago would be inequitable in light of the delay in bringing that claim. Specifically, prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. *Id.* at 192 (internal citations omitted). "The equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case." *Tri–Star,* 17 F.3d at 44.

21. Gidatex clearly had notice of defendants' activities in April 1995 when it terminated its agreement with Campaniello. Thus, the issue is whether Gidatex inexcusably delayed in bringing this litigation and whether that delay prejudiced Campaniello. A trademark owner must take "some affirmative action to protect its rights against innocent parties" who have relied upon the trademark owner's acquiescence. *Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1041 (2d Cir. 1980). Nevertheless, our Court of Appeals has held that "a simple warning letter" suffices to avoid laches. *See id.* ("[a] simple warning letter would have sufficed" to avoid laches during seven year delay); *see also Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1357 (E.D.N.Y.1994)(defendant who received several warning letters and phone calls prior to suit could not claim it was unaware of plaintiff's superior rights); *see also Menendez v. Holt,* 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526 (1888)("[t]he intentional use of another's trademark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent, and the wrong is a continuing one...").

22. There is no evidence here that Gidatex inexcusably delayed. To the contrary, Gidatex's counsel informed Campaniello twice during the approximately three years between the termination of the parties' agreement and the filing of this litigation that Campaniello's continued use of the mark was objectionable. In December 1995 (eight months after the termination), Gidatex sent Campaniello its first warning letter objecting to Campaniello's continued use of the Saporiti trademark, particularly the prominent display of the Saporiti sign outside of Campaniello's New York showroom. Nevertheless, it appears that Campaniello failed to appreciate Gidatex's trademark rights. Twenty-two months later, Gidatex issued its second warning letter. Mr. Campaniello testified that the two letters "left no doubt" in his mind that Gidatex did not approve of Campaniello's use of the Saporiti sign and trademark. Tr. 692 (T. Campaniello). The evidence also shows that after sending its second warning letter, Gidatex promptly investigated Campaniello and filed this action upon learning of the representations made by Campaniello sales people.

Defendants draw the Court's attention to Raffaele Saporiti's acknowledgment at trial that Gidatex could have sued Campaniello at any time after April 1995, but waited because Gidatex wished "to avoid really expensive and complicated actions." Tr. at 234–35 (R. Saporiti). Given the fact that these parties have been in litigation on other matters for at least five years on two different continents, it is not surprising that Raffaele Saporiti wished to avoid yet another lawsuit. Gidatex evidently hoped its letters threatening litigation would suffice to curb Campaniello's use of the Saporiti mark. For the foregoing reasons, I conclude that Gidatex did not inexcusably delay in asserting its trademark rights.

23. Even were I to find that Gidatex inexcusably delayed in filing suit, defendants cannot show that they have been prejudiced by any reliance on Gidatex's delay. Campaniello claims that had Gidatex attempted to clarify its trademark rights sooner, Campaniello would not have embarked on its marketing strategy of gradually liquidating its Saporiti stock. Assuming this representation to be true, it

is unclear how this marketing decision has "prejudiced" Campaniello.

### C. Acquiescence

24. The equitable defense of acquiescence provides a defense when the owner of a trademark "may have so conducted [it]self as impliedly to assure the newcomer that [it] does not object, and the newcomer may have built upon that assurance." *Dwinell–Wright Co. v. White House Milk Co., Inc.*, 132 F.2d 822, 825 (2d Cir.1943); *see also* 5 *McCarthy* § 31:41 at 31–79 (trademark owner's claim defeated when owner "has by affirmative word or action conveyed to the infringer the message that its acts are not objectionable").

25. Campaniello attempts to justify its continued use of the Saporiti Italia mark with Gidatex's December 1995 letter which left open the possibility that Gidatex would tolerate "some limited continued use of the mark for the purpose of selling the remaining stock." According to Campaniello, it follows from this language that Gidatex acquiesced in allowing Campaniello to use the Saporiti mark. However, Campaniello's excerpt from the December 1995 letter conveniently excludes Gidatex's clear directive that "the Saporiti trademark should be removed from all locations on the Campaniello premises where it is prominently displayed." Campaniello's assertion of Gidatex's "acquiescence" flies in the face of Thomas Campaniello's own testimony that he read and understood the import of the December 1995 letter, but chose to ignore it as "incidental".

In addition, as this Court stated on a previous occasion, even though the December 1995 letter "allowed some limited continued use of the mark for the purposes of selling the remaining stock, certainly the 1997 cease and desist letter conveyed a clear message to Campaniello that Gidatex neither expected nor desired Campaniello's efforts." *Gidatex v. Campaniello*, 49 F.Supp.2d 298, 304 (S.D.N.Y. 1999). Thomas Campaniello's written response to the October 1997 cease and desist letter makes it equally clear that he was aware that Gidatex did not condone Campaniello's use of the Saporiti mark, but stubbornly refused to comply with Gidatex's request to remove the sign. Merely because Campaniello disagreed with Gidatex's directives does not mean that Gidatex acquiesced to Campaniello's continued use of the trademark.

### III. Conclusion

26. For the reasons set forth above, I find that defendants have failed to meet their burden of proof on their affirmative defenses of unclean hands, laches and acquiescence.

27. The Lanham Act provides a court with the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Here, injunctive relief is appropriate in order to avoid confusion in the marketplace and to protect the Saporiti Italia trademark. Nevertheless, a court must tailor injunctive relief appropriately. *See George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir.1992)("the relief granted should be no broader than necessary to cure the effects of the harm caused").

Accordingly, Campaniello is permanently enjoined from using the Saporiti Italia mark, except in connection with its sale of the remaining Saporiti Italia inventory. Defendants may continue to sell Saporiti Italia furniture with the Saporiti Italia label affixed to the furniture. However, defendants must remove the Saporiti Italia sign from the front of their showrooms. Defendants must also remove the Saporiti Italia name from any building directories and/or telephone listings which may be in existence. Any advertising for sales of the Saporiti Italia inventory must be accompanied by a disclaimer stating that Campaniello is no longer an authorized Saporiti

Italia dealer and that it has no affiliation with Saporiti Italia.

28. Defendants must submit any post-verdict motions pursuant to Fed.R.Civ.P. 59 by October 18, 1999. Plaintiff must file its opposition papers with the Court by October 29, 1999, and defendants must reply by November 5, 1999.

SO ORDERED.