**GIDATEX, S.r.L., Plaintiff,**

v.

**CAMPANIELLO IMPORTS, LTD., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc., Defendants.**

No. 97 Civ. 9518(SAS).

United States District Court, S.D. New York.

Jan. 31, 2000.

Thomas G. Bailey, Jr., Frank E. Morreale, Whitman Breed Abbott & Morgan LLP, New York City, for Gidatex S.r.L.

Nathan Lewin, Paul F. Enzinna, Timothy J. Preso, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Campaniello.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Gidatex, S.r.L. ("Gidatex") sued Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc. (collectively "Campaniello") for violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement, and common law unfair competition. Gidatex's claims arose from Campaniello's alleged use of the trademark of Saporiti Italia ("Saporiti"), an Italian furniture company whose assets are owned by Gidatex. Campaniello asserted counterclaims for breach of contract, unfair competition, misappropriation and unjust enrichment.

This Court dismissed Campaniello's first three counterclaims and granted summary judgment in favor of Gidatex on the fourth. Gidatex's claims were tried to a jury from August 23 to August 31, 1999; the jury found Campaniello liable on all three claims. The jury then awarded Gidatex $25,000 of Campaniello's profits for the federal claims and $25,000 of Campaniello's profits for the state claims, but did not award any actual damages. Following the trial, this Court rejected Campaniello's equitable defenses of unclean hands, laches and acquiescence and permanently enjoined Campaniello from using the Saporiti mark, except in limited circumstances.

Campaniello now moves, pursuant to Fed.R.Civ.P. 50(b), for judgment as a matter of law, asserting that the jury had no evidentiary basis for awarding Campaniello's profits to Gidatex. Alternatively, Campaniello seeks to limit the jury's award by arguing that the award constituted an impermissible double recovery. Gidatex, for its part, seeks an enhancement of the jury's award of Campaniello's profits, as well as attorneys' fees, costs and prejudgment interest.

## I. BACKGROUND

### A. Facts

The background of this case has been detailed in several opinions previously issued by this Court.[1] I review only the facts relevant to the motions at issue.

From 1974 to 1994, Campaniello acted as the exclusive sales representative for Saporiti. *See Gidatex VI*, 1999 WL 796181, at *1. In March 1994, Campaniello sued Saporiti for breach of contract, fraud, and misrepresentation. *See id.* During that litigation, Saporiti filed for the Italian equivalent of bankruptcy; under the supervision of an Italian bankruptcy court, Gidatex leased Saporiti's assets with the option to purchase them at a later date. *See id.*

In June 1994, Gidatex entered into a distributorship agreement with Campaniello; this agreement was similar to the prior one between Saporiti and Campaniello. *See id.* As part of this agreement, Campaniello withdrew its claims against Saporiti, while Gidatex engaged Campaniello as the exclusive distributor of Saporiti furniture in the United States and other Western Hemisphere countries through March 31, 1995. *See id.* The agreement, which contained an automatic five-year extension if Gidatex purchased Saporiti's assets, required Campaniello to make certain minimum purchases of Saporiti furniture. *See id.* Between June 1994 and March 1995, Campaniello was displeased with the quality of the Saporiti goods and Gidatex's delays and inaccuracies in filling its orders. *See id.* at *2. Ultimately, Campaniello did

---

1. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 13 F.Supp.2d 417, 418 (S.D.N.Y.1998) ("*Gidatex I* "); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 13 F.Supp.2d 420, 423–24 (S.D.N.Y.1998) ("*Gidatex II* "); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 49 F.Supp.2d 298, 299–300 (S.D.N.Y.1999) ("*Gidatex III* "); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 73 F.Supp.2d 345, 346 (S.D.N.Y.1999) ("*Gidatex IV* "); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 1999 WL 731609, at *1–*3 (S.D.N.Y. Sep. 20, 1999) ("*Gidatex V* "); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 1999 WL 796181, at *1–*4 (S.D.N.Y. Oct. 6, 1999) ("*Gidatex VI* ").

not place sufficient orders with Gidatex to meet its minimum purchase requirements. *See id.* Although Gidatex eventually purchased Saporiti's assets, it refused to continue Campaniello's distributorship an additional five years, as contemplated by the distributorship agreement. *See id.*

In April 1995, Gidatex verbally terminated its relationship with Campaniello. *See id.* At the time of the termination, Campaniello had approximately $1,000,000 worth of Saporiti furniture in its warehouses and showrooms. *See id.* Gidatex refused to buy back the furniture but allowed Campaniello to sell its remaining stock to the public. *See id.*

Despite the termination of the agreement, Campaniello continued to use. the Saporiti trademark. *See id.* Eight months after Gidatex's oral termination of the agreement, in December 1995, Gidatex's counsel advised Campaniello's counsel that Campaniello was permitted to use the Saporiti trademark only in connection with the sale of the remaining Saporiti inventory. *See id.* Twenty-two months later, in October 1997, Gidatex's counsel sent Campaniello's counsel a "cease and desist" letter. *See id.* at *3. Campaniello replied that it had " 'no intention of removing the name Saporiti Italia from our wholesale showrooms....' " *See id.* (quoting October 21, 1997 Letter of Thomas Campaniello to Thomas G. Bailey, Jr., Esq.). Gidatex then sent undercover investigators into Campaniello's New York showroom to determine whether Campaniello was using the Saporiti Italia trademark to "pass off" other brands of furniture similar in style to authentic Saporiti merchandise. *See id.*

At trial, Thomas Campaniello testified that after the termination of the distributorship agreement in April 1995, no one from Gidatex gave Campaniello permission to use the Saporiti signs or trademark. *See id.* Campaniello remembered that his lawyer had given him a copy of the December 1995 letter from Gidatex's counsel. *See id.* Although Campaniello understood that the letter requested that he take down the Saporiti sign, he disregarded the letter because he considered it "incidental." *See id.* Campaniello also recalled seeing the October 1997 cease and desist letter and taking this second warning more "seriously." *See id.* Campaniello agreed with plaintiff's counsel that the two letters "left no doubt" in his mind that Gidatex did not approve of Campaniello's use of the Saporiti sign and trademark. *See id.*

Nevertheless, Saporiti signs remained on the storefront of Campaniello showrooms in New York, Dallas and Miami and Dania, Florida where Saporiti stock continued to be sold. *See id.* at *4. Campaniello also continued to use the Saporiti name on delivery trucks and in telephone and building directories. *See id.*

## B. Procedural History

On December 29, 1997, Gidatex sued Campaniello, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement, and common law unfair competition. On March 18, 1998, Campaniello asserted counterclaims for breach of contract, unfair competition, misappropriation, and unjust enrichment.[2]

The parties engaged in a substantial amount of pre-trial litigation, resulting in four written opinions by this Court. On June 2, 1998, this Court denied Gidatex's motions for a preliminary injunction and for expedited discovery. *See Gidatex I*, 13 F.Supp.2d at 419–20. On June 10, 1998, this Court granted Gidatex's motion to dismiss Campaniello's counterclaims for breach of contract, unfair competition, and misappropriation, but denied Gidatex's motion to dismiss Campaniello's counterclaim for unjust enrichment. *See Gidatex II*, 13

---

**2.** Gidatex did not serve Campaniello with the complaint until February 23, 1998. *See Gidatex V*, 1999 WL 731609, at *1 n. 1.

F.Supp.2d at 424–30. In addition, this Court denied Campaniello's motion for a preliminary injunction. *See id.* at 430. On May 17, 1999, this Court granted summary judgment in favor of Gidatex on Campaniello's counterclaim for unjust enrichment. *See Gidatex III,* 49 F.Supp.2d at 300–04. On July 22, 1999, this Court denied Campaniello's motion for entry of a final judgment pursuant to Fed.R.Civ.P. 54(b). *See Gidatex IV,* 73 F.Supp.2d at 346–49.

Before trial, Campaniello asserted the equitable defenses of unclean hands, laches and acquiescence. *See Gidatex VI,* 1999 WL 796181, at *1. The Court bifurcated the equitable and legal claims, and the latter were tried to a jury from August 23 to August 31, 1999. *See id.* On Gidatex's federal claims, the jury found that the Saporiti trademark was "arbitrary" and that Campaniello had infringed the mark; it also found that Campaniello had "engaged in conduct which is likely to confuse or mislead numerous ordinarily prudent purchasers." *See* Court Exhibit 3 (Verdict Sheet), at Questions 1–3. As for damages, the jury answered "yes" to both parts of the following question:

> Has Gidatex proven by a preponderance of the evidence that Campaniello acted in bad faith by either:
>
> (a) intending to capitalize off the reputation of Saporiti Italia by diverting potential sales of Saporiti Italia furniture caused by Campaniello's sales of Il Loft brand furniture between April 1995 and the present?
>
> *OR* (b) intentionally setting out to deceive the public?

*See id.,* at Question 5. The jury then stated that it did not need an accounting and awarded Gidatex $25,000 of Campaniello's profits. *See id.,* at Question 6. Finally, the jury found that Gidatex had suffered damages as a result of actual consumer confusion caused by Campaniello's actions, but awarded Gidatex no actual damages stemming from either injury to the reputation

of Saporiti or expenses incurred by Gidatex in an effort to prevent customers from being confused. *See id.,* at Questions 7, 10.

On Gidatex's state claim, the jury found that Campaniello had engaged in unfair competition. *See id.,* at Question 4. The jury then found that Campaniello had acted in bad faith, answering a question with the identical wording as Question 5. *See id.,* at Question 12. Again, the jury stated that it did not need an accounting and awarded Gidatex $25,000 of Campaniello's profits. *See id.,* at Question 13. Finally, as with the federal claim, the jury awarded no actual damages to Gidatex on the state claim. *See id.,* at Question 14.

After the jury delivered its verdict, the parties discussed with the Court[3] whether the jury had made two separate $25,000 awards. *See* Trial Transcript ("Trial Tr.") at 989–97. In response, the Court asked the jury: "Are you making one $25,000 damages award or are you making two separate $25,000 damages awards?" *Id.* at 997. After deliberating further, the jury responded, in writing: "We the jury make two awards of $25,000 each." Court Exhibit 4.

On October 6, 1999, this Court found that defendants had failed to meet their burden of proof on the equitable defenses of unclean hands, laches and acquiescence. *See Gidatex VI,* 1999 WL 796181, at *4–*9. The Court then permanently enjoined Campaniello from using the Saporiti mark, except in connection with its sale of the remaining Saporiti inventory and subject to stringent conditions. *See id.* at *10.

## II. DISCUSSION

### A. Award of Campaniello's Profits

Both parties challenge the jury's $50,000 award to Gidatex of Campaniello's profits. Campaniello argues that the jury lacked an evidentiary basis to award any profits

---

**3.** Judge Deborah Batts took the verdict for Judge Scheindlin, who was unavailable. Any references to "the Court" in this paragraph refer to Judge Batts.

or, alternatively, that the jury's two awards of $25,000 each constituted an impermissible double recovery. Gidatex, on the other hand, urges this Court to enhance the jury's award of Campaniello's profits.

### 1. Whether the jury had a sufficient evidentiary basis to award any profits

Campaniello moves for judgment as a matter of law, pursuant to Rule 50(b), arguing that the jury lacked a sufficient evidentiary basis to award any of Campaniello's profits to Gidatex. The Second Circuit has explained the relevant standard:

> In ruling on a motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), a district court must consider the evidence in the light most favorable to the non-movant, giving that party the benefit of all reasonable, favorable inferences the jury might have drawn from the evidence. The trial court is not to consider the credibility of the witnesses or otherwise assess the weight of conflicting evidence, since that function is given to the jury. Only when no evidence exists to support the jury's verdict and the verdict it reached could have been based on nothing more than surmise and conjecture or where there is such overwhelming evidence in favor of the movant that reasonable and fair-minded jurors could not arrive at a verdict against the movant, may a trial court properly grant a motion to set aside a jury verdict.

*Jones v. Spentonbush–Red Star Co.*, 155 F.3d 587, 591 (2d Cir.1998) (citations omitted).

 The award of a defendant's profits is one of the remedies contained in the Lanham Act, which states, in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). There are "three categorically distinct rationales" for awarding profits under the Lanham Act: (1) the defendant is unjustly enriched; (2) the plaintiff sustained damages from the infringement; or (3) the award of profits is necessary to deter a willful infringer from doing so again. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir.1992). In order to recover under any of these rationales, "a plaintiff must prove that an infringer acted with willful deception." *Id.* at 1540. The parties agree that only the first and third rationales are at issue in this case.[4]

 Under the unjust enrichment rationale, "a defendant becomes accountable for its profits when the plaintiff can show that, were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff." *George*

---

4. *See* Defendants' Memorandum in Support of their Post–Trial Motion for Judgment as a Matter of Law on Plaintiff's Request for an Award of Defendants' Profits, at 6 n. 3; Memorandum of Law in Opposition to Defendants' Post–Trial Motion for Judgment as a Matter of Law on Plaintiff's Request for an Award of Defendants' Profits, at 4.

*Basch,* 968 F.2d at 1538; *see also Burndy Corp. v. Teledyne Indus., Inc.,* 748 F.2d 767, 772 (2d Cir.1984) ("Unjust enrichment warranting an accounting exists when the defendant's sales were attributable to its infringing use of plaintiff's trademark.") (quotation marks and citation omitted). The record does not contain sufficient evidence to support the jury's award of Campaniello's profits to Gidatex under the unjust enrichment rationale, because Gidatex failed to produce any evidence of lost sales. Although Gidatex cites a number of places in the record ostensibly demonstrating lost sales, these citations merely support a finding that Campaniello intended to divert sales from Gidatex. In reliance on this evidence, the jury found that Campaniello engaged in conduct likely to cause confusion and intended to divert sales and deceive the public. *See* Court Exhibit 3, at Questions 3, 5. The jury did not find—and was not asked to find—that Campaniello actually had diverted any sales. Indeed, Raffaele Saporiti, Gidatex's CEO, testified as follows:

Q: Is the simple answer to my question no, that there is not a single piece of evidence or report that you received of a single interior decorator or anybody in the business who purchased some other brand believing it to be Saporiti Italia?

A: I have no evidence of the final purchases of the architects and consumers that were misled. If this is your question, the answer is no. I have no proof, no written proof of this [sic] purchases.

Trial Tr. at 323. Thus, the unjust enrichment rationale cannot support the jury's award of Campaniello's profits. *See George Basch,* 968 F.2d at 1541 (plaintiff could not prevail under unjust enrichment rationale where plaintiff "produced no evidence to suggest that the infringement caused any sales diversion").

The Second Circuit has explained the basis for awarding profits under the deterrence rationale:

(A) court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark. The rationale underlying this holding is not compensatory in nature, but rather seeks to protect the public at large. By awarding the profits of a bad faith infringer to the rightful owner of a mark, we promote the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services.

*George Basch,* 968 F.2d at 1539; *see also International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 72 (2d Cir.1998) ("We have held that an accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion, if the accounting is necessary to deter a willful infringer from doing so again.") (quotation marks and citation omitted). The jury specifically found that Campaniello was a bad faith infringer, answering "yes" to both of the following questions on its special verdict form:

Has Gidatex proven by a preponderance of the evidence that Campaniello acted in bad faith by either:

(a) intending to capitalize off the reputation of Saporiti Italia by diverting potential sales of Saporiti Italia furniture caused by Campaniello's sales of Il Loft brand furniture between April 1995 and the present?

*OR* (b) intentionally setting out to deceive the public?

Court Exhibit 3, at Question 5.

The record supports the jury's finding, which in turn provides ample basis for the jury's award of Campaniello's profits. Thomas Campaniello testified that no one from Gidatex gave Campaniello permission to use the Saporiti signs or trademark after the distributorship agreement was terminated in April 1995. *See* Trial Tr. at 686. In addition, Campaniello agreed that Gidatex's two letters—in December 1995 and October 1997—left no doubt in his mind that Gidatex did not approve of Campaniello's use of the Saporiti sign and

trademark. *See id.* at 692. Nevertheless, Campaniello continued to display Saporiti signs in its showrooms, *see id.* at 633–42, use the Saporiti mark on its delivery trucks, *see id.* at 767–68, and maintain telephone listings under the Saporiti name, *see id.* at 613–16, 763–64.

Campaniello argued at trial that it continued to use the Saporiti trademark in order to sell its leftover inventory of Saporiti furniture, but the jury rejected this argument, with ample justification. For example, Campaniello maintained a telephone listing in Chicago under the Saporiti name, even though it never had any Saporiti inventory in that city. *See id.* at 763–64. In addition, the record contained evidence from which a reasonable jury could conclude that Campaniello transferred furniture from its New York showroom to its Washington showroom (opened after Gidatex's termination of Campaniello in April 1995) so that it could display the Saporiti signs in the new showroom. *See id.* at 765–67.

Campaniello argues that all of this evidence demonstrates only its willful disobedience of Gidatex's wishes, not its willful deception of the public. But the public saw the Saporiti signs in the showrooms, the Saporiti name on the delivery trucks, and the Saporiti listings in the telephone directory. Indeed, both Thomas and Sandra Campaniello testified that the Saporiti signs had advertising value. *See id.* at 676–77 (Sandra Campaniello), 767–68 (Thomas Campaniello). In addition, the record contained evidence that Sandra Campaniello and her sales associates would tell customers that Saporiti had gone bankrupt and no longer existed. *See id.* at 629, 650; Pl.Ex. 466B, at 4–5. Based on all this evidence, the jury reason-

ably could conclude that Campaniello intended to willfully deceive the public by continuing to use the Saporiti trademark.[5]

Campaniello cites a number of cases to support its argument that it did not engage in willful deception, but none account for the jury's well-supported finding of bad faith in this case. First, Campaniello cites the following language from *George Basch:*

Of course, even when a likelihood of confusion does arise, that does not inexorably lead to the conclusion that the defendant acted with deliberate deceit. Depending upon the circumstances, consumer confusion might as easily result from an innocent competitor who inadvertently crosses the line between a "free ride" and liability, as it could from a defendant's intentionally fraudulent conduct.

*George Basch,* 968 F.2d at 1541. In *George Basch,* however, the Second Circuit specifically noted that "[t]he jury made no finding to the effect that [the defendant] was a bad faith infringer." *Id.* Second, the jury's finding of bad faith distinguishes the cases in which the defendant possessed a colorable claim of right in its use of the plaintiff's mark. *See Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 397–98 (2d Cir.1995) (defendant selected mark that reflected characteristics of product); *Estee Lauder, Inc. v. The Gap,* 932 F.Supp. 595, 615–16 (S.D.N.Y.1996) (defendant independently developed similar mark), *rev'd on other grounds,* 108 F.3d 1503 (2d Cir. 1997).[6]

Before awarding plaintiff a defendant's profits, a court must complete one additional step in its analysis:

Having stated that a finding of willful deceptiveness is necessary in order to

---

**5.** Campaniello also contends that the jury's bad faith finding related to Campaniello's bad faith in disobeying Gidatex's wishes, not its bad faith infringement of Gidatex's trademark. But the jury's finding specifically states that "Campaniello acted in bad faith by . . . intentionally setting out to deceive the public." Court Exhibit 3, at Question 5.

**6.** Campaniello's other citations are inapposite. *See Polymer Technology Corp. v. Mimran,* 975 F.2d 58 (2d Cir.1992) (resale of professional kits in retail trade); *Ringling Bros.– Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.,* 969 F.Supp. 901 (S.D.N.Y.1997) (motion for summary judgment).

warrant an accounting for profits, we note that it may not be sufficient. While under certain circumstances, the egregiousness of the fraud may, of its own, justify an accounting, generally, there are other factors to be considered. Among these are such familiar concerns as: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands. The district court's discretion lies in assessing the relative importance of these factors and determining whether, on the whole, the equities weigh in favor of an accounting.

*George Basch,* 968 F.2d at 1540–41 (citations omitted).[7]

Campaniello relies on the first two factors to support its argument that Gidatex is not entitled to an award of Campaniello's profits. *First,* Campaniello argues that it did not benefit from its infringement. But Campaniello's argument ignores the fact that the deterrence rationale is an alternative route to an award of profits that does not require a showing that the defendant benefited from the conduct. *See id.* at 1539 (under deterrence rationale, "a court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark"); *International Star Class,* 146 F.3d at 72 ("[A]n accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion, if the accounting is necessary to deter a willful infringer from doing so again.") (quotation marks and citation omitted). *Second,* Campaniello argues that an injunction provides sufficient relief. But an injunction, which only prevents future conduct, would not satisfy the deterrence rationale, which "seeks to protect the public at large [by]

deterring public fraud." *George Basch,* 968 F.2d at 1539. In addition, the jury's well-supported finding of bad faith distinguishes this case from the case cited by Campaniello—*Champion Spark Plug v. Sanders,* 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947)—in which the Supreme Court noted that an injunction was sufficient because "there has been no showing of fraud or palming off" but also stated that respondents had tried to comply with a cease and desist order. *Id.* at 131, 67 S.Ct. 1136.

The remaining factors all weigh in favor of awarding Campaniello's profits to Gidatex. *First,* all three Campaniello defendants engaged in the infringement. *Second,* this Court already has ruled that Campaniello could not assert the defenses of either unclean hands or laches against Gidatex. *See Gidatex VI,* 1999 WL 796181, at \*4–\*9.

Only two district courts have applied the factors laid out in *George Basch. See The American Automobile Association (Inc.) v. AAA Automobile Club of Queens, Inc.,* No. 97 Civ. 1180, 1999 WL 97918, at \*10 (E.D.N.Y. Feb. 8, 1999) (award of defendant's profits was warranted "based on the strong and uncontroverted evidence of [d]efendant's willful deception and the likelihood that [d]efendant benefitted from its copying of the AAA marks"); *Life Industries Corporation v. Ocean Bio–Chem, Inc.,* 827 F.Supp. 926, 934 (E.D.N.Y.1993) (award of defendant's profits was not warranted because "no factor weigh[ed] heavily" on plaintiff's behalf and "the complete absence of proof concerning damages indicates that Defendant may have benefitted only minimally from the infringement."), *amended on reconsideration,* 832 F.Supp. 54 (E.D.N.Y.1993), *remanded,* 31 F.3d 42 (2d Cir.1994). No jury trial was held in either of those cases. Here, a jury has awarded Campaniello's profits to Gidatex,

---

7. Although the Second Circuit used the phrase "an accounting for profits," rather than "an award of profits," that does not change the outcome of this case. The jury

clearly stated that it did not require an accounting before awarding Campaniello's profits. *See* Court Exhibit 3, at Questions 6(b), 13(b).

in order to deter Campaniello from infringing Gidatex's mark in the future. Nothing in the *George Basch* factors compels reversal of that conclusion.

### 2. Whether the jury awarded a double recovery

On its special verdict sheet, the jury awarded $25,000 of Campaniello's profits as damages for Gidatex's federal claims and $25,000 as damages for Gidatex's state claim. *See* Court Exhibit 3, at Questions 5–6, 12–13. After consulting with the parties, the Court[8] asked the jurors: "Are you making one $25,000 damages award or are you making two separate $25,000 damages awards?" Trial Tr. at 997. The jury deliberated and then responded: "We the jury make two awards of $25,000 each." Court Exhibit 4. Campaniello argues that the jury's two awards of Campaniello's profits constitute an impermissible double recovery, because both awards stem from the same conduct.

This Court instructed the jury against giving a double recovery:

> If you return a verdict for Gidatex, you must award Gidatex that sum of money you believe will fairly and justly compensate it for defendants' conduct. Here Gidatex brings three different claims for: (1) federal trademark infringement; (2) federal unfair competition; and (3) unfair competition under New York State law. If you find for Gidatex on more then [sic] one of its claims, you must remember that in calculating damages, Gidatex is only entitled to be compensated *once* with defendants' profits and for injuries it actually suffered. Thus, if you find Campaniello liable for more than one of Gidatex's claims, but the resulting injury was no greater than it would have been had you found for Gidatex on only one of those claims, you should award an amount no greater than you would have awarded had you found Campaniello liable on only one claim.

Jury Charge, at 38–39. Neither party challenges the accuracy of this jury instruction, which was a correct statement of the law. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992) (explaining that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive"). "[W]e must presume that the jury followed the court's instructions." *United States v. Joyner*, 2000 WL 14164, at *4 (2d Cir. Jan.10, 2000); *see also Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (noting "the almost invariable assumption of the law that jurors follow their instructions").

At first blush, it appears that the jury did award a double recovery, because both federal and state law supporting the awards of profits require a showing of bad faith. *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("Genesee's state law claim of unfair competition is not viable without a showing of bad faith."); *George Basch*, 968 F.2d at 1540 (in order to recover a defendant's profits under the Lanham Act, "a plaintiff must prove that an infringer acted with willful deception"). In determining whether the two damages awards are coextensive, however, the key inquiry is whether the awards address the same injury. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *see also Lyons Partnership, L.P. v. AAA Entertainment, Inc.*, No. 98 Civ. 0475, 1999 WL 1095608, at *10 (S.D.N.Y. Dec. 3, 1999) (Dolinger, M.J.) ("[W]e view the required analysis as looking to the nature of the injury that is compensated, rather than the policies or interests embodied in the multiple legal theories on which a plaintiff prevails."). Contrary to Gidatex's suggestion,

---

8. Again, any reference to "the Court" in this paragraph refers to Judge Batts. *See* note 3 *supra.*

the existence of different elements in the federal law and state law claims is not enough. *See Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,* 118 F.3d 955, 969–70 (2d Cir.1997) ("Without more, this is irrelevant: an element of liability does not, of its own force, generate damages."), *cert. denied,* 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998).

The jury in this case did not award a double recovery because it compensated Gidatex for different injuries under federal and state law. As outlined above, the jury awarded $25,000 of Campaniello's profits to Gidatex under federal law in order to deter Campaniello from infringing Gidatex's trademark in the future. *See* pp. 12–16 *supra.* The jury could not have used this same rationale in awarding Campaniello's profits under New York law, because New York law achieves deterrence through punitive damages, which were not at issue in this case. *See Getty Petroleum Corp. v. Island Transportation Corp.,* 878 F.2d 650, 657 (2d Cir.1989) (punitive damages are available under New York law "where a defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree") (quotation marks and citations omitted). Section 35 of the Lanham Act, on the other hand, "does not authorize an additional award of punitive damages for willful infringement of a registered trademark. So long as its purpose is to compensate a plaintiff for its actual injuries—even though the award is designed to deter unlawful conduct—the Lanham Act remains remedial." *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir.1988). Under New York law, a jury awards a defendant's profits under the theory that "a plaintiff is 'entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct.'" *Hertz Corp. v. Avis, Inc.,* 106 A.D.2d 246, 485 N.Y.S.2d 51, 54 (1st Dep't 1985) (quoting *Duane Jones Co. v. Burke,* 306 N.Y. 172, 192, 117 N.E.2d 237 (1954)). Thus, the jury awarded $25,000 of Campaniello's profits under New York Law in order to compensate Gidatex for its lost opportunities for profit.

"When confronted with a potentially inconsistent jury verdict, the court must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Turley v. Police Department of the City of New York,* 167 F.3d 757, 760 (2d Cir.1999) (quotation marks and citation omitted); *see also Indu Craft,* 47 F.3d at 497 ("A court's role is to reconcile and preserve wherever possible a seemingly inconsistent jury verdict."). The jury's award of lost opportunities for profits under New York law is not inconsistent with the fact that the lack of evidence of lost sales prevented the jury from awarding Campaniello's profits under the unjust enrichment rationale contained in federal law. In *George Basch,* the Second Circuit stated that an award of defendant's profits under the unjust enrichment rationale "is not to be confused with plaintiff's lost profits, which have been traditionally compensable as an element of plaintiff's damages.... Upon proof of actual consumer confusion, a plaintiff may still obtain damages—which, in turn, may be inclusive of plaintiff's own lost profits." 968 F.2d at 1540. In this case, the Court clearly explained to the jury that "[y]ou may award Gidatex monetary damages for its New York State law claim only if you find that defendants' conduct has caused *actual* consumer confusion as opposed to a mere *likelihood* of confusion." Jury Charge, at 38.

Because the nature of the injuries is different, the jury's awards of Campaniello's profits under state and federal law did not constitute a double recovery. *See Gentile v. County of Suffolk,* 926 F.2d 142, 154 (2d Cir.1991) ("The policy of deferring to a jury verdict is a powerful one, even in cases in which the jury has taken action that is at first blush difficult to explain.").

### 3. Whether the award of profits should be enhanced

■ Gidatex, on the other hand, asks this Court to enhance the jury's award of Campaniello's profits. "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). The Second Circuit has made clear that "a district court is empowered to enhance a monetary recovery of damages or profits." *Bartco Petroleum*, 858 F.2d at 113.

To support its argument, Gidatex points to *New York Racing Association, Inc. v. Stroup News Agency Corp.*, 920 F.Supp. 295 (N.D.N.Y.1996), in which the court used its discretion to triple an award of profits. In *New York Racing*, however, the initial award of profits represented the amount of the defendants' actual profits on the sales of the infringing shirts. *See id.* at 301. The court then enhanced the award in order "to compensate [plaintiff] for the intangible benefits [defendant] earned at [plaintiff's] expense." *Id.* In this case, the jury's award of profits represents its estimation of how much is required to deter Campaniello in the future; as explained above, it was not an award of Campaniello's actual profits. *See* pp. 140–44 *supra*. This Court will not second-guess the jury's estimate, and Campaniello has pointed to no other concrete, albeit intangible, harms for which it requires compensation.

### B. Attorney's Fees

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Gidatex asks this Court to award attorneys' fees totaling $552,-

263.00, charged by its counsel, Whitman Breed Abbott & Morgan LLP ("Whitman Breed").

■ A case does not qualify as "exceptional" under the Lanham Act without a finding of fraud or bad faith. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir.1996) ("[T]his court has explicitly stated that '[the Lanham Act] allows recovery of a reasonable attorney's fee only . . . 'on evidence of fraud or bad faith.' ") (quoting *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1383 (2d Cir.1993) (internal citation omitted)). Indeed, "a district court that fails to consider awarding attorney fees when bad faith is established abuses its discretion." *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir.1992). The mere existence of a finding of bad faith, however, does not automatically entitle the prevailing party to attorneys' fees. *See International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir.1996) ("[A]n award of attorney fees *may* be justified when bad faith infringement has been shown.") (emphasis added). As both Gidatex and Campaniello acknowledge, this Court has discretion to deny an award of attorneys' fees, even with the jury's finding of bad faith.[9]

Gidatex argues that the jury's finding of bad faith supports an award of attorneys' fees in this case. Some courts have awarded attorneys' fees based solely on a finding of bad faith. *See Fruit of the Loom, Inc. v. American Marketing Enterprises, Inc.*, No. 97 Civ. 3510, 1999 WL 172968, at *2 (S.D.N.Y. Mar. 26, 1999) ("*FOL I* "), *adhered to on reconsideration*, 1999 WL 527989 (S.D.N.Y. July 22, 1999) ("*FOL II* "); *Independent Living Aids, Inc. v. Maxi–Aids, Inc.*, 25 F.Supp.2d 127,

---

**9.** *See* Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Prejudgment Interest and an Enhanced Recovery of Profits Pursuant to 15 U.S.C. § 1117(a), at 3; Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees, Costs, Prejudgment Interest and an Enhanced Recovery of Profits Pursuant to 15 U.S.C. § 1117(a), at 4–5.

130 (E.D.N.Y.1998). Other courts have looked to additional factors. *See Lurzer GmbH v. American Showcase, Inc.,* No. 97 Civ. 6576, 1998 WL 915894, at *4–*5 (S.D.N.Y. Dec. 30, 1998) ("Even in a case where, as here, the defendant engaged in willful deception, a court may decline to award [attorneys'] fees if there are other, mitigating factors."), *clarified,* 1999 WL 111931 (S.D.N.Y. Mar.4, 1999), *aff'd,* 1999 WL 1295917 (2d Cir.1999); *Simon & Schuster, Inc. v. Dove Audio, Inc.,* 970 F.Supp. 279, 302 (S.D.N.Y.1997) ("Although we find that Dove willfully infringed …, we do not believe this case qualifies as 'exceptional' in order to justify an award of attorneys' fees."). I find the latter approach more persuasive; this Court must look beyond the jury's finding of bad faith to determine whether this case is an "exceptional" one that merits an award of attorneys' fees.

■ In support of its argument that this case is exceptional, Gidatex points to several alleged instances of bad conduct on the part of Campaniello, some of which formed the basis for the jury's finding of bad faith: (1) deliberately ignoring the adverse results of an earlier litigation; (2) deliberately ignoring "cease and desist" letters sent from Gidatex to Campaniello's counsel and to Campaniello personally; and (3) engaging in litigation tactics designed to delay these proceedings and harass Gidatex. *First,* while the prior litigation involved aspects of the relationship between Gidatex and Campaniello, it had nothing to do with whether Campaniello could use Gidatex's trademark. *See Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.,* No. 95 Civ. 7685, 1996 WL 437907 (S.D.N.Y. Aug. 2, 1996), *aff'd,* 117 F.3d 655 (2d Cir.1997). *Second,* all of Gidatex's examples must be placed in a broader context; this litigation is one battle in a larger legal war with fronts on two continents. *See Gidatex VI,* 1999 WL 796181, at *8

("[T]hese parties have been in litigation on other matters for at least five years on two different continents."); *Gidatex II,* 13 F.Supp.2d at 423–24 (describing procedural history). As Judge Jed Rakoff noted in *Lurzer:*

[O]ne cannot isolate the jury's finding of willful infringement from the broader context of this case: endless sparring and protracted litigation by belligerent parties who insist in couching in one-sided fashion what to any outsider appear to be multifaceted disagreements for which both sides bear blame and as to which neither party comes with unclean hands.

*Lurzer,* 75 F.Supp.2d at 102.

*Third,* a review of the litigation reveals that each party raised contested issues and that Gidatex did not prevail on every one. This Court denied Gidatex's request for a preliminary injunction because of Gidatex's inexcusable delay and because it appeared that Gidatex was "concerned less with the loss of control over the Saporiti Italia mark and more with the suppression of Campaniello as a potential competitor." *Gidatex I,* 13 F.Supp.2d at 420.[10] On the other hand, Campaniello's counterclaims for breach of contract (subject to mandatory arbitration) and unfair competition and misappropriation (failure to state a claim) were dismissed, *see Gidatex II,* 13 F.Supp.2d at 424–30, and Campaniello's request for entry of a final judgment was denied, *see Gidatex IV,* 73 F.Supp.2d at 346–49. As trial approached, Campaniello tried to exclude the testimony of Gidatex's investigators as well as three secretly-obtained tape recordings; this motion was denied. *See Gidatex V,* 1999 WL 731609, at *3–*8. Finally, after trial, Campaniello's equitable defenses of unclean hands, laches and acquiescence were rejected. *See Gidatex VI,* 1999 WL 796181, at *1–*4.

Although this litigation has resulted in more judicial opinions than the average

---

**10.** Gidatex's request for expedited discovery was also denied. "While its claim on the merits appears to be a reasonably strong one, it is not so overwhelmingly likely to prevail at trial" as to merit expedited discovery. *Gidatex I,* 13 F.Supp.2d at 420.

case, each step taken by Campaniello has been justifiable. *Compare Guess?, Inc. v. Gold Center Jewelry,* 997 F.Supp. 409, 412 (S.D.N.Y.1998) (awarding attorneys' fees under Lanham Act where "defendant's conduct with respect to the litigation has caused needless expense for the plaintiff and unnecessarily consumed a great deal of the Court's time") *with Simon & Schuster,* 970 F.Supp. at 302 (refusing to award attorneys' fees where the case "presented a number of close and contested issues"). It is important to remember that the jury found bad faith trademark infringement and unfair competition, not bad faith litigation tactics.[11]

Campaniello argues that this is not an "exceptional case" because Gidatex recovered a relatively small amount of monetary damages, including no actual damages. Courts in this district have disagreed as to whether the failure to recover monetary damages should be a factor in deciding whether to award attorneys' fees. *Compare FOL II,* 1999 WL 527989, at *2 ("[W]hile other courts may have decided not to award attorney's fees where no money damages have been shown, the failure to prove actual damages does not preclude an award of attorney's fees.") *with Lurzer,* 75 F.Supp.2d at 102 (noting the absence of material evidence that Lurzer suffered any ascertainable damage "from the few, isolated acts of infringement that formed the basis of the jury's award"). I find the issue of monetary damages persuasive not because Gidatex received so little, but because it requested so much. At trial, Gidatex sought an accounting of Campaniello's profits from sales of Il Loft products, as well as more than a million dollars in actual damages. *See* Trial Tr. at 208–24, 973–76. These demands provided ample motivation for Gidatex to continue this litigation.

Campaniello also argues that an award of attorneys' fees would be counter to this Court's jury instructions, as well as the expressed wishes of the jury. In its first note, the jury asked: "[D]oes the verdict have any effect on how the legal expenses of this case will be borne by the two parties, and if so, how?" Trial Tr. at 982. After consulting with the parties, the Court instructed the jury: "The answer is that the verdict has no effect on how the legal expenses of this case will be borne by the two parties." *Id.* at 983. Campaniello argues that, based on this note, the jury did not want to award attorneys' fees. Even if this speculation were true, the decision whether to award attorneys' fees is a matter for the court, not the jury. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 928 (S.D.N.Y.1992) ("[A]n award of attorney's fees under the statute is equitable in nature and is to be decided by the court, and not by a jury.").

After considering the relevant case law, the facts of this case, and the history of this litigation, I conclude that this case does not qualify as an "exceptional case" under the Lanham Act, despite the jury's finding of bad faith. As a result, Gidatex's request for attorneys' fees is denied.

### C. Costs

Campaniello argues that the rationales underlying the Court's denial of Gidatex's request for attorneys' fees also support a denial of its request for costs. Unlike attorneys' fees, which are available only in extraordinary cases, the Lanham Act provides that a prevailing party may

---

11. In support of its argument that Campaniello had no good-faith defenses, Gidatex cites this Court's statements at two pre-trial conferences, to the effect that Campaniello should remove the sign. *See* April 24, 1998 Hearing, at 9 ("If I were running a store, I would never sell the last couch so that I could keep the sign up until 2010."); December 3, 1998 Hearing, at 16 ("The reason you want the great big sign is so people will walk in your store. It's obvious. The sooner it's down, the better.... [T]he sign should come down and you can't win."). The Court's comments were not findings of fact.

recover "the costs of the action," subject to the principles of equity. 15 U.S.C. § 1117(a). Courts generally award costs to prevailing parties in Lanham Act cases. *See Tri–Star Pictures, Inc. v. Unger,* 42 F.Supp.2d 296, 306 (S.D.N.Y.1999) ("The Lanham Act also provides for the award of costs in all cases."); *New York Racing,* 920 F.Supp. at 303 ("Having established that [defendant] infringed its mark in violation of the Lanham Act, [plaintiff] is entitled to recover from [defendant] the costs it has incurred in connection with this action."). Gidatex did prevail in this action by establishing a violation of the Lanham Act, despite Campaniello's suggestions to the contrary; as a result, Gidatex is entitled to its reasonable costs. *See Lyons Partnership,* 1999 WL 1095608, at *11 (denying request for attorneys' fees but granting request for costs).

Campaniello also challenges the reasonableness of several of Gidatex's specific requests.[12] "Out-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *Tri–Star Pictures,* 42 F.Supp.2d at 306. I address each challenged request in turn:

● *Reproduction costs:* Gidatex seeks $10,-675.49 in reproduction costs. The Declaration of Frank E. Morreale ("Morreale Decl."), plaintiff's counsel, explains the basis for these charges. *See* Morreale Decl., at ¶ 8; *see also Pastre v. Weber,* 800 F.Supp. 1120, 1127 (S.D.N.Y.1991) ("[T]he entries need only provide an adequate basis for assessing the reasonableness of the expenditure."). Campaniello cites *Tri–Star Pictures* in opposition to this request, but *Tri–Star Pictures* involved two defense counsel seeking reproduction costs, one of which submitted a request eight times larger than the other. *See Tri–Star Pictures,* 42 F.Supp.2d at 306. In the context of this long, protracted litigation,

Gidatex's request for reproduction costs is reasonable. This request is granted.

● *Electronic research costs:* Gidatex seeks $10,612.28 in electronic research costs. The Second Circuit has stated that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *United States v. Merritt Meridian Construction Corp.,* 95 F.3d 153, 173 (2d Cir.1996). This request is denied.

● *Telephone and facsimile costs:* Gidatex seeks $6,311.93 in telephone and facsimile costs. Again, Gidatex has explained the basis for these costs, many of which resulted from international and long-distance communications. *See* Morreale Decl. at ¶ 10. This request is granted.

● *Federal Express, postage, and courier costs:* Gidatex seeks $806.84 in Federal Express, postage, and courier costs. Gidatex has provided a reasonable explanation for these costs. *See* Morreale Decl. at ¶¶ 11–12. This request is granted.

● *Local transportation costs:* Gidatex seeks $1,056.81 in local transportation costs, which represents both travel to and from court and travel home from Whitman Breed's law office after late night and weekend work. *See* Morreale Decl. at ¶ 13. In support of its argument that these costs should be denied, Campaniello cites *Tri–Star Pictures,* in which the court denied reimbursement for secretarial services because "part of the reason lawyers receive a premium rate is to pay for ... expenses such as secretarial services." *Tri–Star Pictures,* 42 F.Supp.2d at 306 (quotation marks and citation omitted). In *Tri–Star Pictures,* however, those secretarial services were "absorbed within the attorneys' hourly rates." *Id.* In this case, counsel for Gidatex has sworn that all of the costs and disbursements are routinely billed by Whitman Breed to its clients.

12. Campaniello has not challenged Gidatex's request for the following items: (1) trial transcript costs of $1,001.00; (2) deposition transcript costs of $3,240.55; (3) court hearing transcript costs of $596.59; (4) interpreting costs of $2,250.00; and (5) docket, filing and service fees of $770.00. These reasonable requests are granted.

*See* Morreale Decl. at ¶ 5; *see also Pastre,* 800 F.Supp. at 1127 ("[P]laintiff's counsel's affidavit attests to the fact that Hughes Hubbard—in accordance with its billing practices—customarily charges its clients separately for such costs. In the absence of any evidence to the contrary, we accept counsel's sworn statement."). Thus, the local transportation costs are not absorbed within the hourly rates and are recoverable. This request is granted.

### D. Prejudgment Interest

 Gidatex also seeks prejudgment interest on the jury's award of $25,000 of Campaniello's profits on Gidatex's federal claim. "Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." *American Honda Motor Co. v. Two Wheel Corp.,* 918 F.2d 1060, 1064 (2d Cir.1990). As explained above, this is not an "exceptional case" under the Lanham Act. *See* pp. 24–31 *supra.* In addition, the $25,000 award represents not actual damages but the amount required to deter Campaniello from infringing Gidatex's mark in the future; Gidatex has offered no reason why it requires additional compensation on that award. Accordingly, Gidatex's request for prejudgment interest is denied.

### III. CONCLUSION

For the foregoing reasons:

1) Campaniello's motion for judgment as a matter of law is DENIED;

2) Gidatex's motion to enhance the jury's award is DENIED;

3) Gidatex's motion for attorneys' fees is DENIED;

4) Gidatex's motion for costs is GRANTED IN PART and DENIED IN PART; and

5) Gidatex's motion for prejudgment interest is DENIED.

Gidatex is awarded Campaniello's profits in the amount of $50,000, in accordance with the jury's verdict. Gidatex also is awarded its costs in the amount of $26,709.21. The Clerk is directed to prepare a Final Judgment and to close this case.

SO ORDERED.